UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 19-cv-62972-RKA
MAGISTRATE JUDGE REID

ROBERT KLECKLEY,

       Petitioner,

v.


MARK S. INCH, SEC'Y,
FLA. DEP'T OF CORR'S,
       Respondent.


RESPONSE TO ORDER TO SHOW CAUSE

COMES NOW Respondent, by and through undersigned counsel, and hereby responds to Petitioner's petition for writ of habeas corpus pursuant to this Court's order to show cause dated December 4, 2019 (DE# 5) would state as follows:

STATEMENT OF THE CASE

1. **COURSE OF PROCEEDINGS AND DISPOSITION IN THE TRIAL COURT.**

Petitioner was charged by information was charged with attempted murder in the first degree (Count I); shooting into an occupied vehicle (Count II); possession of a firearm by a convicted felon (Count III). (Exh. 2).[1] Petitioner had a jury trial on Counts I and II (Trans ('T'), et seq).

---

[1]Exhibit 1 are the docket entries for lower case 99-15141CF10A

The jury found defendant guilty as charged on both counts and answered in the affirmative the special verdict interrogatory that a firearm was used and caused great bodily harm. He was sentenced to life on Count I under the provisions of the "10-20-Life" provisions of §775.087, Fla. Stat. for discharging a firearm and causing great bodily injury, and to a consecutive 30 years on Count II (Exh. 3). Count III was nol prossed.

Petitioner was re-sentenced on Count II, only, on April 9, 2010, *infra.*

**2.   Direct Appeal.**

Petitioner filed a timely notice of appeal to the Fourth District Court of Appeal and Petitioner filed an initial brief (Exh. 4). An answer brief was by the state. (Exh. 5).

On May 16, 2001 the Fourth District affirmed Petitioner's conviction but remanded for correction of sentencing order. Kleckley v. State, 787 So. 2d 868(Fla. 4th DCA 2001)(Exh. 6). Mandate issued on June 1, 2001 (Exh. 7).

**3. State Habeas Petition**

Petitioner filed a habeas petition alleging ineffective assistance of appellate counsel (Exh. 8). The Fourth District granted the petition holding:

> This case involves Robert Kleckley's petition
> for writ of habeas corpus alleging ineffective

> assistance of appellate counsel for failing to order or have transcribed the sentencing transcripts. Kleckley alleges that when the trial court pronounced his sentence, it failed to orally pronounce his sentence under 10-20-Life, and as a habitual offender. We find Kleckley's petition legally sufficient, and grant relief. Compare Thompson v. State, 759 So. 2d 650 (Fla. 2000).
>
> On remand, the trial court may appoint appellate counsel to assist Kleckley with preparing the record on appeal and his initial brief. The appeal is to address sentencing only.

Kleckley v. State, 810 So. 2d 1081 (Fla. 4th DCA 2002)(Exh. 9)

Mandate issued on April 5, 2002 (Exh. 10).

## 4. First Set of Post Conviction Motions

On April 5, 2002 Petitioner filed a motion for post conviction relief (Exh. 11). The state responded and the trial court denied the petition as improperly filed (Exh(s). 12). The Fourth District affirmed the trial court and gave him 30 days to file a motion for post conviction relief in compliance with the Fla. R. Crim. P. 3. 987. Kleckley v. State, 815 So. 2d 737 (Fla. 4th DCA 2002) (Exh. 13). Mandate issued on May 31, 2002 (Exh. 14).

Petitioner filed a new motion on January 15, 2003 and, as a result regarding timeliness, the Fourth District reversed and remanded on November 5, 2003 for further review holding:

> Kleckley claims to have timely filed the

3

motion that was not received by the lower court. As there exists a good faith factual dispute regarding the date Kleckley filed the renewed motion, we remand for the trial court to conduct an evidentiary hearing on the issue of timeliness. See <u>Jones v. State</u>, 854 So. 2d 773, 774 (Fla. 2d DCA 2003 ); <u>Jones v. State</u>, 785 So. 2d 561, 561 (Fla. 2d DCA 2001). Should the state opt to withdraw its objection on timeliness, the trial court should consider the motion on the merits. See <u>Thompson v. State</u>, 761 So. 2d 324, 325 (Fla. 2000).

<u>Kleckley v. State</u>, 857 So. 2d 1009 (Fla. 4th DCA 2003) (Exh. 15)

Mandate issued on November 21, 2003 (Exh. 16).

Thereafter, Petitioner's motion was considered and he filed a supplemental motion (Exh. 17). The state responded (Exh. 18). The trial court denied the motion. The Fourth District affirmed the trial court. <u>Kleckley v. State</u>, 918 So. 2d 306 (Fla. 4th DCA 2005)(Exh. 19). Mandate issued on January 20, 2006 (Exh. 20).

**5. State Habeas Petition**

Petitioner filed a petition for writ of habeas corpus for belated appeal on December 28, 2005 (Exh. 21). The Fourth District denied the petition as untimely (Exh. 22).

**6. MOTIONS TO CORRECT ILLEGAL SENTENCE**

Petitioner filed a motion to correct illegal sentence on January 12, 2006 (Exh. 23). The state responded (Exh. 24). The trial court denied the petition (Exh. 25). Petitioner noted an

4

appeal and filed an initial brief (Exh. 26). The Fourth District affirmed the trial court. Kleckley v. State, 932 So. 2d 209 (Fla. 4th DCA 2006)(Exh. 27). Mandate issued on August 4, 2006 (Exh. 28).

Petitioner filed a subsequent motion to correct illegal sentence on April 25, 2007 (Exh. 29). The state responded (Exh. 30). The trial court denied the petition (Exh. 31). Petitioner noted an appeal and filed an initial brief (Exh. 32). The Fourth District affirmed the trial court. Kleckley v. State, 967 So. 2d 314 (Fla. 4th DCA 2007)(Exh. 33). Mandate issued on December 7, 2007 (Exh. 34).

Petitioner filed a motion to correct illegal sentence on May 21, 2008 (Exh. 35). The state responded (Exh. 36). The trial court denied the petition (Exh. 37). Petitioner noted an appeal and filed an initial brief (Exh. 38). The Fourth District held:

> We reverse the summary denial of appellant's claim that his habitual sentence imposed for count two is illegal and remand for the attachment of record portions conclusively refuting his claim or for resentencing. See Baver v. State, 797 So. 2d 1246, 1251 (Fla. 2001). See also McNair v. State, 920 So. 2d 111 (Fla. 1st DCA 2006). We affirm the trial court's denial of appellant's other claim.

Kleckley v. State, 4 So. 3d 1290(Fla. 4th DCA 2009) (Exh. 39).

Mandate issued on April 17, 2009 (Exh. 40). Petitioner was

resentenced on Count II on April 9, 2010 to thirty (30) years  as an HFO(Sentencing Trans. ("ST") et sq.)(Exh. 41- Re-sentencing documents and documents for HFO).Petitioner noted an appeal and briefs were filed (Exh. 42). The trial court sentence was affirmed by the Fourth District. Kleckley v. State, 89 So. 3d 1135 (Fla. 4th DCA 2012)(Exh. 43). Petitioner filed a motion for rehearing which was denied (Exh. 44). Mandate issued on June 8, 2012(Exh. 45).

**7.    Motion for Post Conviction Relief and Appeal**

On October 1, 2012 Petitioner filed a motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850 (Exh. 46). The state responded (Exh. 47). On January 21, 2016 the trial court denied the petition (Exh. 48). On July 14, 2016 the Fourth District affirmed the trial court. Kleckley v. State, -So. 3d- 2016 WL 3751181 (Fla. 4th DCA 2016)(Exh.49). A motion for rehearing was filed and denied on August 26, 2016 (Exh. 50). Petitioner was warned by court order regarding further frivolous filings (Exh. 51). Mandate issued on September 16, 2016 (Exh. 52).

**8.    FOURTH MOTION TO CORRECT ILLEGAL SENTENCE**

On January 9, 2017 Petitioner filed an amended motion to correct illegal sentence (Exh. 53). The state responded (Exh. 54). The trial court denied the motion and motion for rehearing(Exh.

55).

Petitioner noted an appeal and filed an initial brief (Exh. 56). The Fourth District affirmed the trial court on October 17, 2019. <u>Kleckley v. State</u>, -So. 3d- 2019 WL5260245 (Fla. 4th DCA 2019) (Exh. 57). Petitioner filed a motion for rehearing and request for written opinion which the Fourth District denied on November 22, 2019 (Exh. 58). Mandate issued on December 13, 2019 (Exh. 59).

**9.   The Present § 2254 Petition.**

On November 27, 2019, Petitioner filed the instant petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (DE# 1). On December 4, 2019, this Court ordered Respondent to file a response to Petitioner's petition (DE# 5).

**I.   <u>THRESHOLD ISSUES: TIMELINESS AND PROCEDURAL BAR.</u>**

**A.   <u>Timeliness.</u>**

The time limitation provisions of 28 U.S.C. § 2244(d) provide: (d)(1) A 1-year time period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of

> (A) the date on which the judgment
> because final by the conclusion of direct
> review or the expiration of the time for
> seeking such review;

7

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claims is pending shall not be counted toward any period of limitation under this subsection.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2244. The triggering event relevant to Petitioner's case is "the date on which the judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); see also Gonzalez v. Thaler, 565 U.S. 134 132 S.Ct. 641, 653-54, 181 L. Ed. 2d 619 (2012) (holding that a conviction becomes final upon the expiration of time for seeking direct review); Clay v. United States, 537 U.S. 522, 527, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003) (holding that

"[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); Chavers v. Sec'y, Florida Dep't of Corr., 468 F.3d 1273 (11 Cir. 2006) (holding that one-year statute of limitations established by AEDPA begins to run ninety days after the Florida appellate court affirmed petitioner's conviction rather than ninety days after the mandate was issued by the court).

There were two counts for which Petitioner was convicted and originally sentenced. It was only on Count II that on April 9, 2010, Petitioner was resentenced as an HFO offender to 30 years concurrent with his life sentence for Count I.

Accordingly, the judgment of conviction in the underlying criminal case for Count I became final ninety (90) days after the affirmance of his conviction and sentence on May 16, 2001.Therefore, pursuant to 28 U.S.C. § 2244, Petitioner was required to file his petition prior to August 14, 2001.

Since the federal petition for writ of habeas corpus challenging the subject convictions was not filed until November 27, 2001, well beyond one year after the date on which the subject convictions and sentences became final, the petition is time-barred pursuant to 28 U.S.C. § 2244(d)(1)(A), unless the limitations period was extended by properly filed applications for

9

state post conviction or other collateral review proceedings. 28 U.S.C. § 2244(d)(2).

The limitations period is tolled, however, for the time during which a properly filed application for post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. §2244(d)(2).

For timeliness purposes, Petitioner first challenged his conviction beyond the August 14, 2001 beginning date for the one year tolling period by filing a state habeas petition on November 21, 2001. Accordingly, 100 days of untolled time passed.

Through a period of procedural machinations not affecting timeliness, Petitioner's next important date for timeliness consideration was August 4, 2006, the issuance of mandate affirming the trial court's denial of Petitioner's first 3.800(a) motion. Petitioner's next filing was a 3.800 (a) motion on April 25, 2007. Accordingly, 265 days of untolled time passed.  Petitioner appealed and mandate issued on December 7, 2007.

Petitioner next challenged his conviction on May 21, 2008 with a 3.800 (a) motion. Accordingly, 167 days of untolled time passed.

Mandate issued in the above case on April 17, 2009. Though Petitioner was resentenced only on Count II, as specified by the Fourth District, the next filing for timeliness purposes as to

10

Count I by Petitioner was a 3.850 petition filed on October 1, 2012. Accordingly, 1264 days of untolled time passed.

In the above case, mandate issued on September 16, 2016. The next filing challenge Petitioner's conviction was on January 9, 2017 with a 3.800(a) motion. Accordingly, 116 days of untolled time passed.

As to Count I conviction and sentence a total of 1918 days of untolled time passed. Petitioner is **1,547 days beyond the 365 day period to file a federal habeas petition**. Accordingly, this petition is time-barred and should be dismissed as such.

As to Count II, the tolling period began ninety days after Petitioner's re-sentencing was affirmed on direct appeal on April 18, 2012 which would be July 17, 2012.

Petitioner filed a motion for post conviction relief on October 21, 2012. Accordingly, 97 days of untolled time passed.

Mandate issued on September 16, 2016.

The next filing challenge Petitioner's conviction was on January 9, 2017 with a 3.800(a) motion. Accordingly, 116 days of untolled time passed.

In total **213 days of untolled time passed.**

Accordingly, as to Count II, this petition appears timely.

7.    <u>**MERITS AND PROCEDURAL BAR(S)**</u>

Section 104(d) of the AEDPA [28 U.S.C. §2254 (d)] sets out a

11

significant new restriction upon the ability of federal courts to

grant habeas corpus relief.  It provides:

> (d) An application for a writ of habeas
> corpus on behalf of a person in custody
> pursuant to a judgment of a State court shall
> not be granted with respect to any claim that
> was adjudicated on the merits in State court
> proceedings unless the claim - -
>
> (1) resulted in a decision that was
> contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or
>
> (2) resulted in a decision that was based
> on an unreasonable determination of the facts
> in light of the evidence presented in the State
> court proceeding.

In Williams v. Taylor, 529 U.S. 362 (1999), the Supreme

Court interpreted this provision as follows:

> Under the "contrary to" clause, a federal
> habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that
> reached by this Court on a question of law or
> if the state court decides a case differently
> than this Court has on a set of materially
> indistinguishable facts. Under the
> "unreasonable application" clause, a federal
> habeas court may grant the writ if the state
> court identifies the correct governing legal
> principle from this Court's decisions but
> unreasonably applies that principle to the
> facts of the prisoner's case.

"Clearly established federal law" refers to the holdings of

the United States Supreme Court as of the time of the relevant

state court decision.  Putnam v. Head, 268 F.3d 1223, 1241 (11

12

Cir.2001).   A state court's decision is "contrary to" clearly established federal law if the state court 1)applied a rule that contradicts United States Supreme Court case law, or 2) arrived at a result different from that reached in a United States Supreme Court decision when faced with materially indistinguishable facts. Id.; see also, Fugate v. Head, 261 F.3d 1206, 1215-16 (11 Cir. 2001). A state court arrives at an "unreasonable application" of clearly established federal law if it 1)unreasonably applies a correct legal principle for Supreme Court case law to the facts of a petitioner's case, or 2) unreasonably extends or declines to extend a legal principle from Supreme court case law to a new situation.   Id.   In this context, an "unreasonable application" is an "objectively unreasonable" application.   Williams v. Taylor, supra at 409.

     The Eleventh Circuit has stressed the importance of this new standard, stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002).  Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent

possible under law." <u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002).

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1986) the Supreme Court announced a two part test to be used in evaluating claims of ineffective assistance of counsel as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant a fair trial, a trial whose result is reliable.

A strategic decision of counsel generally cannot establish the first "cause" prong for ineffectiveness, <u>Strickland v. Washington</u>, 466 U.S. 668, 691; "even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." <u>Adams v. Wainwright</u>, 709 F. 2d 1443, 1445 (11 Cir. 1983) <u>Smith v. Murray</u>, 477 U.S. 527, 534 (1986). Counsel's effectiveness must be assessed by viewing the totality of the Circumstances surrounding his overall performance. <u>Strickland v. Washington</u>, 466 U.S. at 688-690 In evaluating an ineffectiveness claim, a reviewing court "must indulge a strong presumption" that counsel performed competently and nondetrimentally on behalf of

14

his client. Id., 466 U.S. at 689. The reviewing court "should presume effectiveness and should avoid second-guessing with the benefit of hindsight." Horton v. Zant, 941 F.2d 1449, 1460 (11 Cir.1991). Tactical decisions of counsel are entitled to broad deference. See Scott v. Dugger, 891 F.2d 800 (11 Cir.1989), cert. denied, 498 U.S. 881 (1990) (counsel not ineffective for failure to cross-examine and present impeaching evidence); Jones v. Smith, 772 F.2d 668 (11 Cir.1985), cert. denied, 474 U.S. 1073(1986) (counsel not ineffective where counsel made tactical choice not to make opening argument).

In order to establish prejudice, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Because a "wide range" of performance is constitutionally acceptable "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F. 3d 384, 386 (11 Cir. 1994).

Finally, the United States Supreme Court has emphasized that the role of the federal courts is limited under the AEDPA in a habeas corpus proceeding where, as here, a claim of ineffective

15

assistance of counsel is raised.  The Court stated that in order

to prevail on such claim in a habeas proceeding a Petitioner:

> [M]ust do more than show that he would have
> satisfied Strickland's test if his claim were
> being analyzed in the first instance, because
> under ' 2254(d)(1), it is not enough to
> convince a federal habeas court that, in its
> independent judgment, the State court decision
> applied Strickland incorrectly. Rather, he
> must show that the [state court] applied
> Strickland to the facts of [Petitioner's] case
> in an objectively unreasonable manner.

Bell, 535 U.S. 698-99 (internal citation omitted); see also,

Yarborough v. Gentry, 540 U.S. 1 (2003); accord, Crawford.

**GROUND ONE:** Petitioner claims counsel was ineffective for

failing to advise the trial court at sentencing of a conflict of

interest.

 Petitioner raised this issue in his state post conviction

motion and the state responded (Exhs. 46;47).

Respondent would adopt and incorporate both the argument and

factual substance of the state's response (Exh. 47, pp. 46-49).

Petitioner never raised this issue with the trial court,

either prior to or during his resentencing, see generally ST. He

clearly was aware of the fact that counsel represented him on direct

appeal and as a result, beyond the non-meritorious aspect of

Petitioner's claim, he waived any claim to conflict of interest.

To the contrary, he wanted to proceed with counsel and waived

16

proceeding pro se (ST 14). Re-sentencing, as held by the Fourth District, was *only* for the specific purpose regarding Petitioner's challenge to his habitual felony offender sentence on Count II (Exh.39). Other than presenting witnesses on his behalf which counsel did (ST 28-45) and make argument on Petitioner's behalf (ST 48-50), it is difficult to discern how defense counsel who had represented Petitioner ten years earlier on direct appeal, could have done more at the re-sentencing particularly in light of the court's charge from the Fourth District.

Respondent contends there was no conflict of interest, *i.e.* counsel had represented a co-defendant, or for that matter even if it existed, Petitioner met his burden that it was an actual conflict. Petitioner suggests that the granting of his state habeas approximately 10 years earlier where the sentencing transcript should have been ordered, in of itself, established a conflict of interest but he offers nothing of substance or how he was adversely affected regarding the re-sentencing hearing with that same defense counsel.

The right to effective assistance of counsel encompasses the right to representation free from actual conflict. Cuyler v. Sullivan, 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). However, in order to establish an ineffectiveness claim premised on an alleged conflict of interest the defendant must "establish

17

that an actual conflict of interest adversely affected his lawyer's performance." Id., at 350, 1708. A lawyer suffers from an actual conflict of interest when he or she "actively represent[s] conflicting interests." Id., at 350. To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. See Herring v. State, 730 So.2d 1264, 1267 (Fla.1998); see also Quince v. State, 732 So.2d 1059, 1065 (Fla.1999). A possible, speculative or merely hypothetical conflict is "insufficient to impugn a criminal conviction." Cuyler, 446 U.S. at 350, 100 S.Ct. 1708. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Id. If a defendant successfully demonstrates the existence of an actual conflict, the defendant must also show that this conflict had an adverse effect upon his lawyer's representation. See Strickland, 466 U.S. at 692, 104 S.Ct. 2052; Cuyler, 446 U.S. at 350, 100 S.Ct. 1708.

Federal law holds that a conflict of interest cannot be established through hypothesis or speculation, United States v. Novaton, 271 F.3d 968, 1010-1011 (11th Cir. 2001), citing Cuyler, United States v. Medel, 592 F.2d 1305 (5 Cir. 1979). A petitioner must show that counsel actively represented conflicting interests.

18

United States v. Ard, 731 F.2d 718 (11 Cir. 1984).

Under Florida law, to prove an ineffectiveness claim premised on an alleged conflict of interest, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance. Herring v. State, 730 So.2d 1264 (Fla.1998). A lawyer suffers from an actual conflict only when he or she actively represents conflicting interests. Id. (emphasis added). To demonstrate an actual conflict, a defendant must identify specific evidence in the record that suggests that his or her interests were impaired or compromised for the benefit of a lawyer or another party. Id. See also Flaherty v. State, 221 So. 3d 633 (Fla. 4th DCA 2017)(held assuming trial counsel had actual conflict of interest, based on fact that counsel was previously prosecutor assigned to defendant's case, defendant failed to demonstrate that such conflict adversely affected counsel's representation, as required to establish claim of ineffective assistance, since defendant was unable to identify single instance in which counsel's prior participation as prosecutor adversely affected or compromised her representation of defendant); Wright v. State, 857 So. 2d 861 (Fla. 2003)(held allegation that investigator who was part of public defender's team was special deputy sheriff did not establish that public defender had a conflict of interest which violated defendant's right to effective assistance of counsel in capital

19

murder trial).

In Barham v. United States, 724 F.2d 1529 (11th Cir.), cert. den'd, 467 U.S. 1230 (1984) the Eleventh Circuit made the distinction between actual and potential conflicts. The Court which required the petitioner to "point to specific instances in the record to suggest an actual conflict or impairment of their interests, make a factual showing of inconsistent interests, and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." Id., at 1532.

Petitioner cites two instances where counsel did not call a witness or in his estimation, properly cross-examine the victim, at his re-sentencing. These two issues which are Grounds Two and Three will be discussed, *infra*.

Moreover, Petitioner has not met his burden that the alleged conflict he speaks of, that counsel had represented him previously, resulted in adverse consequences at his re-sentencing, *i.e.* that he would not have been re-sentenced to thirty years as an HFO, particularly in light of the court's comments:

> THE COURT: All right. Thank you. All right.
> The Court at this point would make the -- Where
> is the notice? No legal cause having been

shown, the Court having reviewed pre-sentence investigation report and disclosed that to the parties, having listened to everything here today, I am prepared to impose sentence on Count Two again.

As I've clearly stated earlier today, the life sentence on Count One is not before the Court today. That was my prior ruling in the matter. The State filed a notice of intent to have the defendant sentenced as habitual felony offender on 23rd September 1999. That notice appears to be in the court file. The defendant obviously has had notice of State's intent as he was previously sentenced as habitual felony offender.

The State, I find, has proved to the Court by the greater weight of the evidence the following:

That the defendant was previously convicted in case number 994537CF10A of the offense of possession of cocaine on the 13th day of August of 1999. I find the State has proved to the Court the defendant was convicted in case number 9619260CF10A felony offense of delivery of cannabis back on January 24th of 1997.

I find State has proved to the Court that the defendant was convicted in case number 9618542CF10A of the offense of possession of cocaine. That was January 24th of 1997.

I find the State has proved to the Court that the defendant was convicted in case number 94109175 CFlOA, the offense of possession of cannabis. And that was on June 29th of 1995.

I find the State has proved the defendant was convicted in case number 9521529CF10A of the offense of it's either possession, sell, deliver, purchase or manufacture of cannabis. It doesn't clearly say what it is on that one. On 22nd January of 1996. But it's a violation

21

of 893.03 (l(c)for third degree felony it says on judgment.

So I find based upon this evidence of the State that the defendant has, in fact, been convicted. Prior to convicted of at least two felony offenses at least two of them were subsequently imposed. At least one of them is violation of some statute other than 893.13 relating to the simple purchase or possession of a controlled substance. He has delivery of cannabis for consideration for sure.

I find that he committed the offense for which I am sentencing him today on the 20th day of August 1999. He committed the offense within five years of his last date of conviction. I've considered PSI. There is no evidence before me that any of prior convictions have been set aside by any post-conviction proceeding, appeal, or governor.

Do you have you such evidence, Mr. Chloupek?

MR. CHLOUPEK: I do not.

THE COURT: Mr. Kleckley, do you have any such evidence?

MR. KLECKLEY: No.

THE COURT: I find it has not been set aside. I find it necessary to sentence the defendant for protection of the public as habitual felony offender.

I've reviewed the facts of the case. I've listened. I do appreciate the input of not only[victim], but of Mr. Kleckley's family and friends. He is very blessed to have such a wonderful group of people on his side.

However, having considered everything, under all of the circumstances, I am not convinced that the sentence that was previously imposed

22

by Judge Khan should be changed.

As result, it is there for the judgment of this Court, and sentence of the law, Count Two, offense of shooting in an occupied vehicle, the defendant is hereby committed to the custody of the Department of Corrections to be imprisoned to the term of thirty years as habitual felony offender. Receive credit for all time served. Not only county jail, but also Florida state prison.

I order that that sentence on Count One, or Count Two, I should say, is to run concurrent with the life sentence that he's currently serving on Count One in this regard. Is there any other aspect of sentence that needs to be imposed on Count Two?

MS. SMITH: No.

THE COURT: Mr. Chloupek?

MR. CHLOUPEK: No.

(ST 50-54)

**GROUND TWO:** Petitioner claims counsel was ineffective for failing to cross-examine the victim at resentencing on April 9, 2010.

Petitioner raised this claim in his post conviction motion. The state responded and the trial court adopted the reasoning of the state's response in denying the claim. The trial court's ruling was affirmed by the Fourth District. The states response was as follows:

Kleckley claims his counsel was ineffective

23

for not cross examining the victim concerning:
(1) his "description of the culprit that
committed the crime" when he first spoke to
the detective, (2) whether he vlas influenced
vvnen he picked the defendant in the photo
line-up, (3) if the defendant was the only
person in the photo line-up with braided hair,
and (4) if there was a possibility that he was
mistaken in identifying the defendant as the
person who shot him. (defendant's motion page
9)

These are all questions involving the
guilt(conviction) phase of the trial and would
have been completely irrelevant and
inappropriate for resentencing. After all, the
defendant's guilt was not an issue since his
convictions had been affirmed many years
before. Kleckley v. State, 787 So. 2d 868
(Fla. 4th DCA 2001). Thus, counsel could not
have acted deficiently in failing to question
the victim about issues which related to the
offenses, not the sentence.

Defendant Kleckley also contends that counsel
should have asked the victim:(1) what his
"reason for wanting the Defendant to remain in
prison for his natural life" was; (2) 1f he,
the vlct1m, felt the defendant showed signs of
rehabilitation and (3) if he, the victim, felt
the defendant would be able to function in
society. (defendant's motion page 9) With
regard to the victim's reasons for wanting the
defendant to remain in prison for life, the
victim already stated his reasons. (Ex.D, page
27) Any further questioning would have been
cumulative.

As for questioning whether the defendant could
function in society or if he had shown any
"signs of rehabilitation," the victim would
not have been in any position to know, opine,
or speculate on such matters. Post conviction
relief cannot be predicated upon speculation
and conjecture. Jones v. State, 845 So. 2d 55,

24

> 64 (Fla. 2003); <u>Bruno v. State</u>, 807 So. 2d 55,
> 67 (Fla. 2002); <u>Maharaj v. State</u>, 778 So. 2d
> 944, 951 (Fla. 2000). Thus, because neither
> deficiency nor prejudice has been
> demonstrated, this ground should be DENIED.

(Exh. 47, pp. 48-49)

Petitioner's re-sentencing only concerned Count II and was not a re-litigation of his trial which took place in 2000 as he explicitly suggests in the questions he believes counsel should have asked the victim (Pet. 6-7).

Questions Petitioner's counsel should have interposed to the victim regarding the reasons for punishment of Petitioner were irrelevant and would have been inadmissible as they are based on utter speculation such as whether Petitioner would be able to function in society (Pet. 7). Moreover, all of these questions would have been moot as Petitioner was still serving a life sentence on Count I.

Accordingly, counsel was neither deficient nor did prejudice inure to Petitioner at his resentencing. <u>Strickland</u>.

**GROUND THREE:** Petitioner claims trial counsel was ineffective for failing to call Dorothy Jones as a witness at resentence, on April 9, 2010.

This claim was raised in Petitioner's state post conviction motion and the state responded that the pleading was deficient and, at best, her testimony as to Petitioner's prison

progress would have been cumulative (Exh. 46; 47, pp. 50-51). Petitioner testified on his behalf at re-sentencing and spoke of strides he had made in prison (ST 46). Further, defense counsel noted that the PSI bore this out (ST 49).

A claim of ineffective assistance of counsel based on counsel's alleged failure to investigate and interview witnesses must include the following allegations: (1) the identity of the prospective witness; (2) the substance of the witnesses' testimony; (3) an explanation as to how the omission of the evidence prejudiced, the outcome of the trial; and (4) the witnesses were available to testify at the time of trial. Nelson v. State, 875 So. 2d 579 (Fla. 2004); Bryant v. State, 901 So. 2d 810, 821-22 (Fla. 2005); see also Catis v. State, 741 So. 2d 1140 (Fla. 4th DCA 1998). The defendant must allege more than mere speculation. Kennedy v. State, 547 So. 2d 912, 913 (Fla. 1989).

Here, as to Jones' testimony, Petitioner never averred in his petition that he told his counsel about this witness and asked that she be called to testify (Exh. 46, pp.296-298). Hence, counsel could not be deemed deficient by the Florida state courts nor this Court.

As the trial court noted, *supra*, the court heard from a variety of witnesses, both family and friends on Petitioner's behalf at sentencing. Petitioner claims he would have received a more

"lenient" sentence as to Count II (Pet. 8). However, there is nothing in the record which would supports this conclusion. Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See Ferguson v. U.S., 699 F.2d 1071 (11 Cir. 1983).

Accordingly, this claim should be denied.

**GROUND FOUR:** Petitioner claims trial counsel was ineffective for failing to object to a defective verdict form depriving the jury of it's pardon power.

Petitioner raised this claim in his post conviction motion. The state responded to this claim as follows:

> In related claims, the defendant contends his trial counsel was ineffective for not objecting to an allegedly defective verdict form, for failing to renew objections to striking the jury panel, and for failing to obtain a fingerprint expert and a hair expert to analyze evidence in the vehicle which he claims would have cast doubt on his guilt.

> As noted, the defendant was before this Court to be resentenced, on Count II only, as a result of a successful Rule 3.800(a) motion. Kleckley v. State, 4 So. 3d 1290 (Fla. 4th DCA 2009). Kleckley's convictions, however, were final since his direct appeal in 2001. See, Kleckley v State, 787 So. 2d 868 (Fla. 4th DCA 2001).

> Following some procedural issues that are not

27

relevant herein, See, Kleckley v. State, 857
So. 2d 1009 (Fla. 4th DCA 2003), and Kleckley
v. State, 815 So. 2d 737 (Fla. 4th DCA 2002),
Kleckley's Rule 3.850 motion filed on January
17, 2003, (Ex G, motion filed January 17,
2003), and his September 14, 2004, Motion to
Supplement his previously filed Rule 3.850
motion for post conviction relief, (Ex.H),
were responded to by the state. The state
urged denial of the January 17, 2003, motion
on the merits, and asserted the grounds raised
in the supplemental motion filed in 2004 were
time barred. (Ex.I, state's response filed
January 5, 2005, without supporting exhibits)
It should be noted that defendant Kleckley
claimed  in those pleadings that his trial
counsel was ineffective.

This Court, in its Order rendered February 1,
2005, denied the defendant's motions and in
doing so adopted the state's leasoning from
its response. (Ex.J, Order) The defendant
appealed and this Court's denial of his timely
January 17, 2003, Rule 3.850 motion for post
conviction relief, and his untimely September
14, 2004, supplement to his motion for post
conviction relief, and this Court's denial was
summarily affirmed. Kleckley v. State, 918 So.
2d 306 (Fla. 4th DCA 2005).

Thus, the defendant had the time and
opportunity to assert claims of ineffective
assistance of trial counsel He cannot now,
after an intervening resentencing as a result
of a successful Rule 3.800(a) motion, raise
additional claims of ineffective assistance of
trial counsel. In other words, defendant
Kleckley's resentencing, which resulted not
from his direct appeal but from his successful
Rule 3.800 motion, did not toll the two-year
time limit for filing a Rule 3.850 motion
attacking his conviction and trial counsel.
See, Gillis v. State, 32 So. 3d 681 (Fla. 2d
DCA 2010); See also, Joseph v. State, 835 So.
2d 1221, 1222 n.3 (Ela 5th DCA 2003)("The two-

year limitation is not tolled by other
collateral proceedings filed in the trial
court, even if a corrected sentence is
entered. An illegal sentence may be corrected
at any time, and 1t would make no sense to
allow a judgment to be attacked many years
after the expiration of the two-year deadline
simply because a sentence was corrected
pursuant to a rule 3.800(a) motion."); <u>Pierce</u>
<u>v. State</u>, 875 So. 2d 726, 727 r1. 1 (Fla. 4th
DCA 2004)(noting the difference between cases
"involve[ing] re-sentencing on direct appeal"
and cases such involving "resentencing
following a post-conviction motion"). These
grounds are untimely, impermissibly
successive, and therefore procedurally barred
and should be DENIED on that basis.

(Exh. 47; pp. 51-53)

Respondent would adopt the procedural history and argument in
the state's response referenced above that the motion for post
conviction relief was untimely, successive and that his re-
sentencing did not toll the limitations period as to both Counts I
and II. Respondent would further adopt the procedural history as
outlined, *supra*, in arguing that the state courts were correct in
dismissing Petitioner's motion as untimely and successive.

The trial court adopted the reasoning of the state's response
in denying the claim (Exh. 48) The trial court's ruling was affirmed
by the Fourth District (Exh. 49). Thereafter, Petitioner filed a
motion for rehearing which was denied by the Fourth District
(Exh.50).

Under Florida law, the re-sentencing did not toll the time

pursuant to Fla. R. Crim. P. 3.850 (b). See Gillis v. State, (held defendant did not file rule 3.850 motion until September 27, 2007, more than two years after his direct review proceedings were concluded. See Fla. R.Crim. P. 3.850(b); defendant's resentencing, which resulted not from his direct appeal but from his successful rule 3.800 motions, did not toll the two-year time limit for filing a rule 3.850 motion attacking his convictions citing Fla. R.Crim. P. 3.850(b); O'Neill v. State, 6 So.3d 630, 630 (Fla. 2d DCA 2009); Marrero v. State, 967 So.2d 934, 936 (Fla. 2d DCA 2007)); Joseph v. State, 835 So.2d 1221, 1222 n. 3 (Fla. 5th DCA 2003) ("The two-year limitation is not tolled by other collateral proceedings filed in the trial court, even if a corrected sentence is entered. An illegal sentence may be corrected at any time, and it would make no sense to allow a judgment to be attacked many years after the expiration of the two-year deadline simply because a sentence was corrected pursuant to a rule 3.800(a) motion.").

Further, it is important to note that this issue was not raised in Petitioner's first post conviction motion or supplemental motion alleging ineffective assistance of counsel filed on May 20, 2002 (Exh. 11;17). Accordingly, this state court post conviction petition is successive. See Fla. R. Crim. P. 3.850(h).

As the Florida state courts correctly found Petitioner's 2012 motion for post conviction relief unambiguously untimely and

successive under the Florida Rules of Criminal Procedure, this
Court would not have jurisdiction. A claim is procedurally
defaulted from federal habeas review if it was presented in state
court and rejected on the independent and adequate state ground of
procedural bar. Coleman v. Thompson, 501 U.S. 722, 734-35 and n. 1
(1991); Howard v. Warden, Calhoun State Prison, No. 18-14571-B,
2019 WL 1931866, at *1 (11th Cir. Mar. 29, 2019)(citing Caniff v.
Moore, 269 F.3d 1245, 1247 (11th Cir. 2001)(holding claims found
to be procedurally defaulted under state law cannot be addressed
by federal habeas courts)).

By way of illustration, failure to comply with Florida's
procedural rules regarding competency hearings implicates state law
and is not cognizable on habeas review. See Fla. R. Crim. P. 3.210,
3.211; Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991) (quoting
Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)(questions
of state law and procedure "rarely raise issues of federal
constitutional significance. [A] state's interpretation of its own
laws provides no basis for federal habeas corpus relief, since no
question of a constitutional nature is involved.")..

A procedural default occurs when a claim is filed in state
court and because the claim could have or should have been raised
at an earlier time, the state court refuses to reach the merits and
denies relief on procedural grounds. It is well settled that when

a state court has applied a state procedural bar to a claim, that claim is likewise barred from federal habeas corpus review. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991); <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991); <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); Wainwright v. Sykes, 433 U.S. 72 (1977).

The Supreme Court has held that "[w]hen a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 414, 125 S.Ct. 1807, 1812, 161 L.Ed.2d 669 (2005).

In <u>Mackey v. Secretary, Department of Corrections United States District Court</u>, 2017 WL 4003758 (M.D. Florida 2017) the Middle District succinctly articulated the impact of a state's court rejection of a claim on procedural grounds and state rules pertaining to that claim:

> When the state court's rejection of a federal constitutional claim on procedural grounds is based on an "independent and adequate" state ground, federal review of the claim is barred. <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a

"manifestly unfair manner." Id. (citing Card
v. Dugger, 911 F.2d 1494 (11th Cir. 1990)).
"To qualify as an 'adequate' procedural
ground, a state rule must be 'firmly
established and regularly followed.' " Walker
v. Martin, 562 U.S. 307, 316 (2011) (citation
omitted).

The rule that a sentence imposed after
obtaining collateral relief has no effect on
Rule 3.850's two-year statute of limitations
is firmly established and regularly followed.
See Woodberry v. State, 193 So.3d 5, 6 (Fla.
4th DCA 2016) ("The fact that [Woodberry] was
later resentenced on a postconviction motion
did not restart the time for him to raise
postconviction challenges to his
conviction."); Gillis v. State, 32 So. 3d 681,
682 (Fla. 2d DCA 2010) ("Mr. Gillis's
resentencing, which resulted not from his
direct appeal but from his successful rule
3.800 motions, did not toll the two-year time
limit for filing a rule 3.850 motion attacking
his convictions."); Joseph v. State, 835 So.2d
1221, 1222 n.3 (Fla. 5th DCA 2003) ("The two-
year limitation is not tolled by other
collateral proceedings filed in the trial
court, even if a corrected sentence is
entered."). The state appellate court approved
of the postconviction court's reliance on this
rule when it per curiam affirmed the denial of
postconviction relief.

Therefore, Mackey's claim is procedurally
defaulted because the state court addressed
the federal claim through the application of
an independent and adequate state procedural
ground. See Harris v. Reed, 489 U.S. 255, 262
(1989) ("[A]n adequate and independent finding
of procedural default will bar federal habeas
review of the federal claim, unless the habeas
petitioner can show" the applicability of
either the cause and prejudice or fundamental
miscarriage of justice exception). Mackey has
not argued or shown that an exception applies

to overcome the default. Accordingly, Ground
One is barred from federal habeas review.

Here, the evidence against Petitioner was substantial and
compelling that he was the perpetrator of the shooting. On August
20, 1999 the victim and Jammie Cobb ("Cobb")planned to attend to a
concert at a Club called the Brickhouse, located at 735 South State
Road 7 in Plantation.  The victim and Cobb, testified they drove
to the club in  the victim's Ford Expedition SUV, stopping in a
parking lot across the street from the club (T 244-245-46, 309-
310). When the victim saw two female club acquaintances leaving the
area, he waved, stating "all right, ladies, have a good night,
drive safely" (T 248).

Petitioner approached the victim, stating "you don't have to
be saying goodnight - - drive home safe to my woman" (T 249). The
victim and Cobb testified that the victim explained to Petitioner
that the victim's words were directed to other women, Petitioner
reiterated that victim was "disrespecting" him by ''talk[ing] to
my woman" (T 249,310). Cobb responded by walking around the
Expedition, telling Petitioner "it was nothing;" Although Cobb
testified that Petitioner initially said "all right, man," when
Petitioner and a male companion were driving off, Petitioner stated
"this is not going to end like this" (T 252, 312).

Twenty minutes later the victim testified he was sitting

34

inside his Expedition when he noticed Petitioner "sneaking up" from behind the truck with two other men; at that time Petitioner stated "yeah, that's the fuck ass cracker that was talking all that other shit earlier" (T 253). Cobb reacted by again approaching Petitioner, asking him not to "start anything," as off-duty policemen were located across the street (T 313, 315). Although Petitioner told Cobb that he had no animus towards Cobb, he stated "I got something against this sucker right here," referring to the victim (T 3 15). The victim testified he begin apologizing to Petitioner, who stated "fuck, that fuck ass, I don't hear that" (T 253). Both the victim and Cobb testified Petitioner asking his companion what to do, with the companion responding "we ain't come all this way back here for nothing" (T 254, 316).

The victim testified Petitioner then reached inside his pants, withdrawing a gun, then fired two shots inside the victim's Expedition (T 254-255). When the victim raised his arm in defense, he was shot in the forearm and leg (T 255).

After being shot, the victim drove across the street to inform an off-duty policeman, then was hospitalized for injuries to his knee, forearm, and calf (T 256-257). The following day, the victim chose Petitioner's photograph from a six-person photo lineup (T 259,274). Two days after the shooting, Cobb likewise identified Petitioner's photograph from the same six-person lineup (T 325).

The victim testified he was looking "straight at" the gunman's face prior to the shooting, noting that the gunman had braided hair and "lots of gold teeth" (T 305-306)

Humberto Pacini, a Plantation police officer, testified he was driving south on State Road 7 near the Brickhouse when he heard "shots fired;" when two bystanders identified a green Oldsmobile as the vehicle containing the man who "did the shooting," Pacini activated his overhead lights and sirens, then began pursuing the Oldsmobile South on State Road 7 (T 398-403). Pacini recalled seeing three occupants in the Oldsmobile, with the driver being a "black male" (T 403-404, 410).

Eventually, the Oldsmobile crashed into another vehicle while turning west on Davie Boulevard, after which a "black male" exited the passenger side of the vehicle, then fled the area (T 406,411). Pacini then detained the vehicle's two other passengers, Thomas Thompson and Karl Kowlessar (T 407). Pacini recalled that the man who fled the scene had "short dreads" (T 408,411).

A search inside the Oldsmobile turned up a Florida Power and Light electric bill with Petitioner's name (T 439). Also in the vehicle were two prescriptions for Karen Noltion ("Noltion"), the individual that lives at this address with Petitioner and where he was arrested (T 409). As well, there was a photo of Petitioner and Noltion (T. 456).

Allen Greenspan, a Broward Sheriffs Office crime lab firearm's examiner, testified that he examined the empty shell casings and single bullet recovered from the scene of this shooting; according to Greenspan, the bullets were fired from a "semi-automatic" handgun (T 474, 478-479). Greenspan agreed that such a weapon could be accidentally discharged if bumped while its user had a finger on the trigger (T 481).

In accordance with the evidence adduced at trial, there was strong circumstantial evidence that Petitioner had fled in the vehicle used by the perpetrator in the shooting and he was identified unequivocally by the victim and another eyewitness whose identifications were not fleeting but based on conversations with him on two occasions just prior to the shooting.

**GROUND FIVE:** Petitioner claims counsel was ineffective for failing **to** renew his objection to the jury panel and bolstered the jurors statements and admitted Petitioner's guilt.

Respondent would adopt and incorporate the state unequivocal procedural bar argument articulated in **Ground Four**. Moreover, based upon the evidence adduced at trial as outlined in **Ground Four**, Petitioner has not met the deficiency and prejudice prongs in Strickland. Accordingly, this ground should be denied.

As to the merits, counsel was far from ineffective. After the juror Klug indicated he could not be an impartial juror on *voir*

*dire* the court gave the following admonition which the entire panel heard:

> THE COURT: Yes, sir, you may. Let me explain this to you, sir. One of the things you have to do, if you're selected to serve, and that is to follow the law, the law that Mr. Kleckley is presumed innocent. Either you can follow it or you can't. If you can't follow it, tell us you can't.
>
> MR. KLUG: I don't think I could.
>
> THE COURT: But that's the way our system of justice is. Any person accused of a crime I presumed innocent.
>
> The State of Florida has the burden of proving the defendant's guilt beyond a reasonable doubt. Are you able to do that?
>
> MR. KLUG: I have to say no.

(T 173-174)

Counsel moved to strike the entire venire and offered reasons which was denied (T 174-175). Counsel cannot be deemed ineffective because the trial court denied his motion.

Petitioner does not aver that the juror even sat on his panel.

Insofar as counsel's comments he did not admit Petitioner's guilt as Petitioner suggests or even implied he was guilty. To the contrary, one has to review counsel's voir dire in full context regarding the jurors statement he could not be impartial and that Petitioner must have done something:

> MR. MCHUGH: You got it. No uh-uh's. No uh-

38

huh's, this, that, anything, because guess what, we're having a test time. You sat through all these other attorneys. Now it's my turn and I'm going to twist this, you're going to do the talking, and you'll tell me what you know about the law so far, not the lawyers. –

Right now, I'm going to deal with something that this gentleman brought up. You know, you're not the only one who thinks that, okay, where there's smoke there's fire. He wouldn't be here if he didn't do something wrong. How long were you a police officer, sir?

MR. MANGAN: About twenty-five years.

MR. MCHUGH: Ever have a case where the person was innocent?

MR. MANGAN: Me, personally?

MR. MCHUGH: Know, but as a police officer.

MR. MANGAN: Yes.

MR. MCHUGH: So it isn't true that – you can get to a courtroom easily, can't you?

MR. MANGAN: (Indicating in the affirmative.)

MR. MCHUGH: In fact, how many times did you investigate a crime where you had – you didn't -- you had no evidence, you had to take the word of someone that a crime even occurred?

MR. MANGAN: (Indicating in the affirmative.)

MR. MCHUGH: How many times did you do that?

MR. MANGAN: Numerous.

MR. MCHUGH: All right. Were you always sure whether they were telling you the truth?

MR. MANGAN: No. You had to conduct a complete and thorough investigation.

MR. MCHUGH: Sometimes you're dead-ended; right?

MR. MANGAN: We all know there's a lot of people that are convicted and go to the penitentiary and it turns out they are not guilty because of DNA tests. Eyewitness accounts are obviously incorrect. So there's all kinds of reasons to believe that a person is ' not necessarily automatically guilty because they've been arrested.

MR. MCHUGH: Do the rest of you all agree with that, what this gentleman said? He's an expert. He's a police officer for many years. Eyewitness identification. Have you -- in the papers, you're familiar with cases around the country where I think it was a Texas case, seven eye witnesses said the guy committed the Kentucky Fried Chicken robberies. Do you remember that?

MR. MANGAN: Certainly.

MR. MCHUGH: What did they find out, how long he was in prison after God only knows how many years?

MR. MANGAN: It wasn't him.

(T 181-83)

**GROUND SIX:** Petitioner claims the trial court erred in reclassifying and enhancing attempted first degree murder whihch led to an illegal sentence because the verdict form did not contain the without firearm option. Petitioner raised this claim in his 3.800 (a) motion filed on May 27, 2008.

40

A resentencing hearing was held and the trial court noted that the jury verdict issue had been previously addressed and that he was only allowed to re-sentence, *per* the Fourth District mandate, the Habitual Felony Offender issue as to Count II(ST 15-16).  As the state noted below in the response to Petitioner's second and successive post conviction motion:

> It should be noted that the Fourth District Court of Appeals specifically ordered the state to respond only to Kleckley's challenge to his HFO sentence on Count 2 as contained in point two of his motion, (Ex.F, Order in 4DCA Case No. 4D08- 3706), and further noted in their opinion 1eve1sing the summary denial on Count 2, "We affirm the trial court's denial of appellant's other claim. <u>Kleckley</u>, 4 So. 3d 1290, 1291 (Fla. 4th DCA 2009). The "other claim" raised by the defendant in his Rule 3.800(a) motion concerned the verdict form which he claimed was defective by not giving the jury the option of finding him guilty without the use of a firearm and therefore concerned his sentence on Count 1. (Ex.D)

(Exh. 47, p. 48)

Petitioner appealed the trial court decision, under the guise of manifest injustice to remand the case for further proceedings on the verdict form issue (Exh. 42). The Fourth District upheld the trial court's ruling and re-sentencing.

The Florida state courts were correct. The procedural history of this claim reflects that Petitioner's original motion to correct premised on Fla. R. Crim. P. Rule 3. 800 (a) was summarily denied

on February 23, 2006  Petitioner appealed that summary denial (R 457) This Court affirmed the trial court in Kleckley v. State, 9~2 So. 2d 209 (Fla. 4th DCA 2006). Petitioner filed another motion pursuant to 3. 800 (a) on May 1, 2007(R 464-481). That motion was summarily denied on June 26, 2007 (R 511). That decision was appealed and this Court affirmed the trial court on September 26, 2007 in Kleckley v. State, 967 So.2d 314 (Fla. 4th DCA 2007). As Petitioner notes the trial court summarily denied his third Fla. R. Crim. P. 3.800 (a) motion filed on May 27, 2008. He raised the specific issue regarding the jury verdict form he raises in the instant appeal.

Petitioner appealed that summary denial and this Court remanded specifically to correct the habitual sentencing error as summarily denied by the trial court and remanded for either record portions or resentencing. This Court further stated: "We affirm the trial court's denial of appellant's's other claim". Kleckley v. State, 4 So.3d 1290, 1291 (Fla. 4th DCA 2009). The "other" claim referred to by this Court is the one raised once again and being relitigated in the present appeal after resentencing was held.

Moreover, in the instant petition, Petitioner has not cited to any United States Supreme Court ruling of, for that matter, federal precedent which clearly shows the Florida state court's misapplied federal law upon which a claim should be based.

42

Further, Petitioner did not exhaust this claim as he did not raise federal claims on direct appeal and based his argument only on state cases (Exh. 4). Exhaustion of state remedies requires that petitioner fairly present federal claims first to a state court. Duncan v. Henry, 513 U.S. 364, 115 S.Ct 887, 130 L.Ed.2d 865 (1995); Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); Atkins v. Att'y Gen. of Alabama, 932 F.2d 1430 (11 Cir. 1991). Even though not alleged here, the mere similarity between a claim of state and federal error is insufficient to establish exhaustion. Duncan, 513 U.S. at 366 (noting petitioner's failure to apprise state courts that evidentiary challenge was based in part on federal due process concerns was insufficient to exhaust §2254 due process; further noting mere similarity of claims was insufficient). See Keller v. Larkins, 251 F.3d 408, 413 15 (3rd Cir.2001)(holding that a habeas petitioner's claim of violation of federal due process in admission at murder trial of evidence of his gang connections was unexhausted where petitioner argued in state court that the admission of the evidence violated state standards regarding proof of uncharged bad acts and that its prejudicial impact outweighed its probative value, but neither the federal Constitution nor any judicial decision based on the federal Constitution was mentioned and passing references in state court to the concept of a "fair trial" were insufficient to give the

43

state courts fair notice that petitioner was asserting a federal constitutional claim). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. See Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

**GROUND SEVEN:** Petitioner claims counsel failed to object or argue the giving of erroneous jury instructions on the "necessary lesser included offense".

Respondent would adopt and incorporate the state unequivocal procedural bar argument articulated in **Ground Four**. Moreover, based upon the evidence adduced at trial as outlined in **Ground Four**, Petitioner has not met the deficiency and prejudice prongs in Strickland. Accordingly, this ground should be denied.

Moreover, this was an issue which would have been cognizable on direct appeal but Petitioner did not raise this on appeal. Issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainright, 715 F.2d 512 (11th Cir. 1983). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982).

44

In any event, double jeopardy principles were not violated. Comparing the two shooting crimes with the crime of attempted second-degree murder, the former requires the element of shooting with a firearm from a vehicle or into a vehicle, but the latter does not. See Lopez-Vazquez v. State, 931 So.2d 231, 235 (Fla. 5th DCA 2006) (disapproved of on other grounds by, Valdes v. State, 3 So. 3d 1067 (Fla. 2009)). (held convictions for attempted second-degree murder and two shooting offenses, all arising out of same criminal episode, did not violate double jeopardy principles; each crime contained an element the others did not, and core offense of shooting statutes was battery and core offense of attempted second-degree murder was homicide, and thus, crimes of attempted second-degree murder and two shooting offenses were not degree variants of the same underlying offense for which dual convictions were unauthorized); State v. Hines, 695 So.2d 747, 748 (Fla. 1st DCA 1997) ("Shooting into a conveyance thus likewise contains an element, shooting, not required by attempted murder, which does not require a firearm. Separate convictions and sentences for attempted murder and for shooting into a conveyance therefore are valid, despite arising from the same criminal episode.").

**GROUND EIGHT:** Petitioner claims counsel was ineffective because he failed to subpoena an expert for fingerprinting analysis.

45

Respondent would adopt and incorporate the unequivocal state procedural bar argument articulated in **Ground Four**. Accordingly, this ground should be denied. Moreover, based upon the evidence adduced at trial as outlined in **Ground Four**, Petitioner has not met the deficiency and prejudice prongs in <u>Strickland</u>.

Further, it is important to note that this issue was not raised in Petitioner's first post conviction motion or supplemental motion alleging ineffective assistance of counsel filed on May 20, 2002 (Exh. 11;17). Accordingly, this state court post conviction petition is successive. <u>See</u> Fla. R. Crim. P. 3.850(h).

**GROUND NINE:** Petitioner claims counsel was ineffective because he failed to subpoena a hair analyst to examine substance of hair within the windshield of the car the perpetrator drove.

Respondent would adopt and incorporate the state unequivocal procedural bar argument articulated in **Ground Four.** Moreover, based upon the evidence adduced at trial as outlined in **Ground Four**, Petitioner has not met the deficiency and prejudice prongs in <u>Strickland</u>. Accordingly, this ground should be denied. As to this particular issue, Petitioner raised it in his first post conviction motion which the Florida courts denied (Exh. 11, pp. 130-131)

Moreover, Petitioner used the lack of DNA in argument to the jury when in closing counsel stated: "Now, one hair will give us the DNA. No testing, right here in our Broward County lab, for DNA

(T 534).

**GROUND TEN:** Petitioner contends there was lack of probable cause to make an arrest of his person.

Petitioner first raised this claim in his 3.850 post conviction petition. Beyond the fact this claim was not raised on direct appeal, the claim was untimely and successive. Respondent would adopt and incorporate Respondent would adopt and incorporate the state unequivocal procedural bar argument articulated in **Ground Four.** Accordingly, this ground should be denied.

Further, Petitioner raised this issue in his first supplemental post conviction motion which the trial court denied and the Fourth District affirmed (Exh. 17- pp. 132-133). It was clearly successive and already ruled upon.

Moreover, this was an issue which would have been cognizable on direct appeal but Petitioner did not raise this on appeal. Issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainright, 715 F.2d 512 (11th Cir. 1983). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982).

Exhaustion of state remedies requires that petitioner fairly present federal claims first to a state court. Duncan v. Henry, 513 U.S. 364, 115 S.Ct887, 130 L.Ed.2d 865 (1995); Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); Atkins v. Att'y Gen. of Alabama, 932 F.2d 1430 (11 Cir. 1991).

Even though not alleged here, the mere similarity between a claim of state and federal error is insufficient to establish exhaustion. Duncan, 513 U.S. at 366 (noting petitioner's failure to apprise state courts that evidentiary challenge was based in part on federal due process concerns was insufficient to exhaust §2254 due process; further noting mere similarity of claims was insufficient). See Keller v. Larkins, 251 F.3d 408, 413 15 (3rd Cir.2001)(holding that a habeas petitioner's claim of violation of federal due process in admission at murder trial of evidence of his gang connections was unexhausted where petitioner argued in state court that the admission of the evidence violated state standards regarding proof of uncharged bad acts and that its prejudicial impact outweighed its probative value, but neither the federal Constitution nor any judicial decision based on the federal Constitution was mentioned and passing references in state court to the concept of a "fair trial" were insufficient to give the state courts fair notice that petitioner was asserting a federal constitutional claim). A state's interpretation of its own laws or

rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. <u>See</u> <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983).

In his petition, Petitioner does not state how the Florida state court decisions were neither contrary to or involved an unreasonable application of clearly established federal law.

As to the merits, Petitioner alleges that probable cause was based on tampered evidence and misleading statements by "state officials" (Pet. 16). However, there is no basis in fact to Petitioner's allegations of tampering nor does he provide them. He only writes: "The link of confirming the identity of Petitioner was broken by omitting to examine relevant particularities that would have exonerated the Petitioner from the crime. Neither the lower court nor the proponent ever proved or submitted other evidence that tampering did not occur. Petitioner further avers that relevant physical evidence cannot be admitted when there is evidence of probable tampering." (Pet. 16). In other words, according to Petitioner, because there was no evidence that tampering did not occur, it *must have occurred.* A petition for a writ of habeas corpus must "State the facts supporting each ground." R. 2(c)(2), <u>foll</u>. 28 U.S.C. § 2254. <u>See</u>, <u>Adams v. Armontrout</u>, 897 F.2d 332 (8th Cir. 1990).

Petitioner was identified unequivocally by the victim and

49

another eyewitness as the shooter. There was physical evidence implicating him with the vehicle that sped away from the scene after the shooting, from which he fled. There was probable cause for his arrest.

**GROUND ELEVEN:** Petitioner contends the trial court erred in sentencing him to an enhanced sentence as an HFO.

Petitioner raised this issue in his fourth motion to correct sentence which the trial court denied and the Fourth District affirmed. Petitioner was re-sentenced on Count II, only, on April 9, 2010, because the state conceded after remand that the priors introduced by the state during the original sentencing hearing did not qualify Kleckley for sentencing as a HFO. See, Kleckley v. State, 4 So. 3d 1290 (Fla. 4th DCA 2009)(reversing the summary denial of Kleckley's Rule 3.800(a) claim that his HFO sentence imposed for Count II was illegal and remanding for the attachment of record portions conclusively refuting his claim or for resentencing). After a new sentencing hearing before this Court, Kleckley was again sentenced to serve 30 years in prison as a HFO on Count II. Kleckley v. State, 89 So. 3d 1135 (Fla. 4th DCA 2012).

At the outset Respondent contends that this type of claim regarding sentencing is not cognizable in a petition for habeas corpus relief filed under 28 U.S.C. section 2254. The present issue

50

is not cognizable in this federal habeas petition as it is grounded on an interpretation of state law and/or procedure relating to sentencing. See, Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 111 L. Ed. 2d 638(1987); Brannon v. Booth, 861 F. 2d 1507, 1508 (11th Cir.1988)("a habeas petition grounded on issues of state law provides no basis for habeas relief . . . In the area of state sentencing guidelines in particular . . . federal courts can not review a state's alleged failure to adhere to its own sentencing procedures").

Accordingly, on the aforementioned basis, Petitioner's claim should be denied.

Petitioner's following five (5) prior convictions which were introduced at his re-sentencing hearing, support the imposition of the HFO sentence on Count II (Exh. 41, pp. 191-226).

Florida Statutes §775.084 outlines the requirements for imposition of a HFO sentence. The court must find "[t]he defendant has previously been convicted of any combination of two or more felonies ... " and the defendant has committed the felony he is to be sentenced for "[w]ithin 5 years of the date of the conviction of the defendant's last prior felony or other qualified offense, or within 5 years of thedefendant's release from a prison sentence .... " § 775.084(1)(a)1., 2.b. And, the felony for which the

defendant is to be sentenced and one of the prior felonies cannot be for the purchase or possession of a controlled substance.

In pronouncing sentence the trial court stated:

> The State, I find, has proved to the Court by the greater weight of the evidence the following:
>
> That the defendant was previously convicted in case number 994537CF10A of the offense of possession of cocaine on the 13th day of August of 1999. I find the State has proved to the Court the defendant was convicted in case number 9619260CF10A felony offense of delivery of cannabis back on January 24th of 1997.
>
> I find State has proved to the Court that the defendant was convicted in case number 9618542CF10A of the offense of possession of cocaine. That was January 24th of 1997.
>
> I find the State has proved to the Court that the defendant was convicted in case number 94109175 CFlOA, the offense of possession of cannabis. And that was on June 29th of 1995.
>
> I find the State has proved the defendant was convicted in case number 9521529CF10A of the offense of it's either possession, sell, deliver, purchase or manufacture of cannabis. It doesn't clearly say what it is on that one. On 22nd January of 1996. But it's a violation of 893.03 (1(c)for third degree felony it says on judgment.
>
> So I find based upon this evidence of the State that the defendant has, in fact, been convicted. Prior to convicted of at least two felony offenses at least two of them were subsequently imposed. At least one of them is violation of some statute other than 893.13 relating to the simple purchase or possession of a controlled substance. He has delivery of

52

cannabis for consideration for sure.

I find that he committed the offense for which I am sentencing him today on the 20th day of August 1999. He committed the offense within five years of his last date of conviction. I've considered PSI. There is no evidence before me that any of prior convictions have been set aside by any post-conviction proceeding, appeal, or governor.

(ST 50-52)(emphasis added)

Petitioner committed the offenses for which he has filed a habeas on August 20, 1999. Petitioner had more than two prior felony convictions, adjudicated on separate dates, and at least "one of the prior felonies cannot be for the purchase or possession of a controlled substance." .§775.084(1)(a)3. That prior offense, as recognized by this Court at resentencing, was for delivery of cannabis in Case No. 96-19260CF 1 0A (Exh. 41, p. 216) and there was a conviction of a third degree felony narcotics charge in 95-21529CF10 (Exh. 41, p. 202).

The information in Case No. 96-19260CF10A clearly charged the defendant with delivering cannabis to a detective for consideration contrary to §§893.03(1)(c) and 893.13(1)(a)(2), Fla. Stat..Further, the probable cause affidavit in that case also reflects the defendant sold one bag of cannabis to the detective for $10.00. This offense is clearly a third degree felony. See, §§893.03(1)(c) and 893.13(1)(a)(2), Fla. Stat. (Exh. 41, p. 220).

The statute cited by Petitioner to support his claim that the offense he was convicted of in Case No. 96-19260CF10A was a misdemeanor, §893.13(3), Fla. Stat., does not apply to his case. §893.13(3), Fla. Stat. involves delivery of less than 20 grams of cannabis without consideration. As noted, the defendant delivered the cannabis in Case No. 96-19260CFI0A for consideration of $10.00. Additionally, the information in Case No. 96-l 9260CF10A makes it clear the defendant was not charged with possession of cannabis, but with delivery for consideration, of cannabis. Delivery for consideration is simply not "purchase or possession of a controlled substance" as meant in § 775.084(l)(a)3.

As to all eleven claims, it is the position of the Respondent that the decisions of the State courts in denying the claims were neither contrary to or involved an unreasonable application of clearly established federal law and the decision of the state courts were based on a reasonable determination of the facts in light of the evidence presented in the State court proceedings. Accordingly, an evidentiary hearing is not warranted and the petition be denied.

ASHLEY MOODY
Attorney General

s/Mitchell A. Egber
MITCHELL A. EGBER
Assistant Attorney General
Florida Bar No. 35619
1515 North Flagler Drive

Suite 900
West Palm Beach, FL 33401-3432
Tel: (561) 837-5016
Fax: (561) 837-5099
CrimappWPB@myfloridalegal.com

Counsel for Respondent

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, February 20, 2020, on all counsel of record or <u>pro se</u> parties identified in the attached Service List in the manner specified, either via transmissions of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/Mitchell A. Egber</u>
MITCHELL A. EGBER
Assistant Attorney General

<u>**SERVICE LIST**</u>

ROBERT KLECKLEY VS. MARK S. INCH, SEC'Y,
FLA. DEP'T OF CORR'S,
CASE NO.19-CV-62972-RKA
(MAGISTRATE JUDGE REID)


United States District Court, Southern District of Florida

Robert Kleckley
976678
South Bay Correctional Facility
Inmate Mail/Parcels
600 U S Highway 27 South
South Bay,  FL 33493-2233

Service by U.S. Mail