UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cv-62972-ALTMAN/REID

ROBERT KLECKLEY,

    Petitioner,

v.

STATE OF FLORIDA,

    Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

This cause is before the Court upon Petitioner, Robert Kleckley's ("Petitioner") Petition for writ of habeas corpus under 28 U.S.C. § 2254. For the reasons addressed below, it is **RECOMMENDED** that the Petition be **DENIED**.

## BACKGROUND

Petitioner is a state prisoner convicted of attempted murder ("Count I") and shooting into an occupied vehicle ("Count II") in 2001. The crime arose from an altercation between Petitioner and the victim outside of a nightclub in Plantation, Florida, resulting in Petitioner shooting the victim as the victim attempted to flee. He was sentenced to life imprisonment on Count I and to a consecutive 30-year sentence on Count II. On April 9, 2010, Petitioner was resentenced on Count II. Although Petitioner has raised 11 claims in this case, for reasons that will be explained, the only timely issues before the Court in this case relate to Petitioner's resentencing on Count II on April 9, 2010.

1

The Instant Petition

Petitioner initiated the instant 28 U.S.C. § 2254 Petition on November 27, 2019. [ECF No. 1]. Petitioner asserts the following claims:

**Claim 1:** Counsel was ineffective for not advising the trial court of a conflict of interest at resentencing.

**Claim 2:** Counsel was ineffective for failing to cross-examine a state witness during the resentencing.

**Claim 3:** Counsel was ineffective for failing to call Dorothy Jones as a witness at the resentencing.

**Claim 4:** Counsel was ineffective for failing to object to the "defective" verdict form, thereby depriving the jury of its pardoning power.

**Claim 5:** Counsel was ineffective for failing to renew objections to the "tainted" jury panel, and for bolstering prejudicial statements in admitting Petitioner's guilt.

**Claim 6:** The trial court erred in reclassifying and enhancing attempted first-degree murder in Count I, which resulted in an illegal sentence because the verdict form did not contain an option to find Petitioner guilty of the charged offense or a less offense.

**Claim 7:** The trial court erred in enhancing and reclassifying Count I from a first-degree felony to a life felony.

**Claim 8:** Counsel was ineffective for failing to retain an expert to conduct fingerprint analysis on the various items found in the suspect vehicle.

**Claim 9:** Counsel was ineffective for failing to retain an expert to conduct an analysis of hair found in the suspect vehicle.

**Claim 10:** There was lack of probable cause to support Petitioner's arrest.

**Claim 11:** The trial court erred in sentencing Petitioner as a Habitual Felony Offender.

*See generally* [*Id.*].

## **DISCUSSION**

**I.      Timeliness**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs petitions for writ of habeas corpus brought under 28 U.S.C. § 2254. S. 735, 104th Cong. § 102-108 (1996). *See Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998) (per curiam). The AEDPA imposes a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1). Specifically, the AEDPA provides that the limitations period shall run from the latest of:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See Id.*

The Eleventh Circuit has held the one-year statute of limitations period begins to run ninety days after the state appellate court affirms a petitioner's conviction, and not ninety days from when the mandate issues. *Chavers v. Sec'y, Florida Dep't of Corr.*, 468 F.3d 1273, 1275–76 (11th Cir. 2006). The limitations period is tolled, however, while a properly filed application for post-conviction or other collateral review is pending in the state court. *See* 28 U.S.C. § 2244(d)(2).

Consequently, if a petitioner sat on any claim creating time gaps in the review process, the one-year clock would continue to run. *Kearse v. Sec'y, Fla. Dep't of Corr.*, 736 F.3d 1359, 1362 (11th Cir. 2013).

### A. Initial Appeal and Petitioner's First Set of Post-Conviction Motions

Regarding his conviction and initial sentence, Petitioner timely appealed his conviction to the Fourth District Court of Appeal ("Fourth DCA"). [ECF No. 12-1 at 25]. On May 16, 2001, the Fourth DCA affirmed the conviction, but remanded for correction of the sentencing order. *Kleckley v. State*, 787 So. 2d 868 (Fla. 4th DCA 2001). The mandate issued on June 1, 2001. [ECF No. 12-1 at 72].

Thereafter, Petitioner filed his first state habeas petition, in which he alleged ineffective assistance of appellate counsel. [*Id.* at 74]. Specifically, Petitioner alleged counsel failed to order or have the sentencing hearing transcribed. The Fourth DCA granted this petition, and ordered that on remand the trial court was to appoint appellate counsel to assist Petitioner in preparing the record on appeal. *Kleckley v. State*, 810 So. 2d 1081 (Fla. 4th DCA 2002). The mandate issued on April 5, 2002. [ECF No. 12-1 at 100].

Petitioner filed a Fla. R. Crim. P. 3.850 motion for post-conviction relief on April 5, 2002. [*Id.* at 102]. The trial court denied the petition as improperly filed, [*Id.* at 116], and the Fourth DCA affirmed and ordered that Petitioner file a motion compliant with Fla. R. Crim. P. 3.987 within 30 days. *Kleckley v. State*, 815 So. 2d 737 (Fla. 4th DCA 2002). Petitioner filed his renewed motion for post-conviction relief on January 15, 2003. [ECF No. 12-1 at 126]. The trial court denied this motion as untimely, but on November 5, 2002, the Fourth DCA reversed and remanded finding there was a "good faith factual dispute regarding the date [Petitioner] filed the renewed motion." *Kleckley v. State*, 857 So. 2d 1009 (Fla. 4th DCA 2003). The Fourth DCA ordered that

4

the trial court conduct an evidentiary hearing to determine whether the renewed motion was timely filed. *Id.* On remand the trial Court denied Petitioner's renewed motion for post-conviction relief [ECF No. 12-2 at 11], and the Fourth DCA affirmed on December 21, 2005. [*Id.* at 15]. The mandate issued on January 20, 2006. [*Id.* at 16]. Petitioner filed another state habeas petition on December 28, 2005. [*Id.* at 18–25]. The Fourth DCA denied the petition as untimely on January 27, 2006. [*Id.* at 27].

Petitioner filed a Fla. R. Crim. P. 3.800(a) motion to correct illegal sentence on January 12, 2006, [*Id.* at 28–31], which the trial court denied on February 23, 2006. [*Id.* at 45]. The Fourth DCA affirmed the trial court's decision on May 24, 2006, *Kleckley v. State*, 932 So. 2d 209 (Fla. 4th DCA 2006), and the mandate issued on August 4, 2006. [ECF No. 12-2 at 61]. A subsequent motion to correct illegal sentence was filed on April 25, 2007. [*Id.* at 62–80]. This motion was denied as well, [*Id.* at 111], with the Fourth DCA affirming on September 26, 2007, *Kleckley v. State*, 967 So. 2d 314 (Fla. 4th DCA 2007). The mandate issued on December 7, 2007. [ECF No. 12-2 at 136].

**B. New Sentencing and Petitioner's Second Set of Post-Conviction Motions**.

Petitioner filed a third motion to correct illegal sentence on May 21, 2009, [*Id.* at 137], which the trial court denied on June 11, 2008. [*Id.* at 167]. On appeal, however, the Fourth DCA reversed "the summary denial of [Petitioner's] claim that his habitual sentence imposed for count two is illegal and remand for the attachment of record portions conclusively refuting his or for resentencing … [and] affirm the trial court's denial of appellant's other claim." *Kleckley v. State*, 4 So. 3d 1290 (Fla. 4th DCA 2009). In accordance with the Fourth DCA's instructions, on April 9, 2010, the trial court resentenced Petitioner to 30 years in prison as a Habitual Felony Offender. [ECF No. 12-2 at 187]. The new sentence was affirmed by the Fourth DCA on April 18, 2012.

*Kleckley v. State*, 86 So. 3d 1135 (Fla. 4th DCA 2012). A motion for rehearing was denied [ECF No. 12-2 at 282], and the mandate issued on June 8, 2012. [*Id.* at 284].

Petitioner moved for post-conviction relief on October 1, 2012. [*Id.* at 285]. The trial court denied the motion on January 21, 2016. [ECF No. 12-3 at 237]. On July 14, 2016, the Fourth DCA affirmed the trial court's denial of the motion. *Kleckley v. State*, No. 4D16-1149, 2016 WL 3751181, at *1 (Fla. 4th DCA 2016). The Fourth DCA denied a subsequent motion for rehearing and for clarification, [ECF No. 12-3 at 267], and also warned Petitioner that continuing to file "abusive, repetitive, malicious, and/or other frivolous filing[s] may result in sanctions." [*Id.* at 288]. The mandate issued on September 16, 2016. [*Id.* at 290].

Petitioner filed his fourth, and final, motion to correct illegal sentence on January 9, 2017. [*Id.* at 292]. The motion was again denied by the trial court [ECF No. 12-4 at 99], as was a motion for rehearing. [*Id.* at 103, 110]. The trial court's decision was affirmed on appeal. *Kleckley v. State*, No. 4D19-2366, 2019 WL 5260245, at *1 (Fla. 4th DCA 2019). The Fourth DCA denied Petitioner's subsequent motion for rehearing and request for written opinion. [ECF No. 12-4 at 142]. The mandate issued on December 13, 2019. [*Id.* at 144].

C. **Timeliness of Petitioner's Claims**

A review of the record shows that Petitioner's habeas claims regarding his conviction are all untimely. Only habeas claims related to his resentencing on Count II are timely. As such, seven of Petitioner's eleven claims are untimely.

Petitioner's conviction became final on May 16, 2001, ninety days after his conviction was affirmed by the Fourth DCA. Accordingly, under 28 U.S.C. § 2244, the one-year period during which Petitioner could seek habeas relief under § 2254 began to run on August 14, 2001. Thus, unless the statutory period was tolled, Petitioner was required to file a petition by August 14, 2002.

Petitioner did successfully toll the statutory period on November 21, 2001, when he filed his state habeas petition. By that time, however, 100 days of untolled time had passed, and he had 265 days left to file a habeas petition in this Court. Because he had filed various post-conviction and collateral review motions in state courts, the clock began to run again on August 4, 2006, when the Fourth DCA issued a mandate affirming the trial court's denial of the 3.800(a) motion Petitioner had filed on January 12, 2006. But, Petitioner did not file another post-conviction motion until April 25, 2007. During that time, 265 days of untolled time had passed. The April 25, 2007, Rule 3.800(a) motion was denied and appealed and became final on December 7, 2007. At that time, Petitioner had only one day in which to file a federal habeas petition. He did not do so. In fact, this petition was not filed until November 27, 2019. [ECF No.1]. Consequently, Petitioner missed the statutory period in which he could bring a federal habeas petition challenging his conviction.

Accordingly, any claims related to his conviction, or otherwise unrelated to the resentencing on Count II, are time-barred. Claims 4, 5, 6, 7, 8, 9, and 10 all relate to his conviction or trial errors, are all time-barred. Claim 4 deals with an ineffective assistance of counsel claim surrounding trial counsel's alleged failure to object to portions of the jury verdict form relating to Count I. Claim 5 deals with trial counsel's failure to strike specific members of the jury panel. Claim 6 revolves around the trial court's supposed error in the reclassification and enhancement of Count I by not including on the verdict form an option for the jury to find Petitioner guilty on Count I, but without any enhancement. Claim 7 also concerns the trial court's alleged error in enhancing and reclassifying Count I as a life felony instead of a first-degree felony. Claim 8 and 9 deal with trial counsel's failure to obtain analysts to conduct tests on the fingerprints and hair found in the suspect vehicle, respectively. Lastly, Claim 10 alleges there was insufficient probable

cause to arrest Petitioner in the first place. These claims are time-barred and need not be addressed on the merits.

The remaining claims, which all relate to his resentencing on Count II, are timely. Petitioner was resentenced on April 9, 2010, after the state conceded that the prior convictions used to enhance his sentence during the original sentencing did not qualify under the habitual felony offender statute. At the new sentencing hearing, he was again sentenced to 30 years in prison, the same amount of time he had previously received. *Kleckly v. State,* 89 So.3d 1135 (Fla. 4th DCA 2012). Petitioner's resentencing became final on April 18, 2012, after the Fourth DCA affirmed Petitioner's on appeal. The statutory period for Petitioner to file a § 2254 petition as to the Count II resentencing began to run 90 days after, which was July 17, 2012. Petitioner tolled the statutory period when he filed a motion for post-conviction relief on October 21, 2012. At that time, 97 days of untolled time had passed. The clock did not begin to run again until September 16, 2016, when the Fourth DCA issued its mandate affirming the trial court's denial of the 2012 motion for post-conviction relief. Petitioner subsequently filed a 3.800(a) motion on January 9, 2017, again tolling the statutory period. Before filing the 3.800(a) motion, 116 days of untolled time had passed, thereby leaving the total number of untolled days which had passed at 213. Petitioner, however, filed the instant § 2254 Petition before the statutory period began to run again. Accordingly, the claims related to the Count II resentencing—Claims 1, 2, 3, and 11— are timely.

## II.     Petitioner's Claims 1, 2, 3, and 11

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that adjudicated on the merits in a State court proceeding unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

Under § 2254(d)(1)'s "contrary to" clause, courts may grant a Petition if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under its "unreasonable application" clause, courts may grant a habeas petition if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the case. *Id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citation omitted). That is, "[a] state court's … determination of the facts is unreasonable only if no fairminded jurist could agree with the state

court's determination…." *Hosley v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotation marks omitted).

Under §2254(d), where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "look through the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (internal quotation marks omitted). "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

A. **The Underlying Offense**

On August 20, 1999, Miguel Rodriguez (the "victim"), and his friend Jamie Cobb, were at a nightclub in Plantation, Florida. The victim, while seated in his truck, waved to several women he knew as they walked past his vehicle. He wished them a good night and told them to drive safely. Petitioner then approached the victim and told him he should not speak to "my woman." An argument ensued during which the victim and Cobb attempted to explain to Petitioner that the victim was speaking to his acquaintances, and not the woman Petitioner was with. Petitioner did not accept the victim's explanation, but eventually left the area after several of the victim's friends approached. Before he left, however, Petitioner remarked that "this is not going to end like this" and "it ain't over," as he drove away in his own vehicle.

Shortly thereafter, Petitioner returned with several other individuals. Petitioner drew a firearm from his waistband. The victim unsuccessfully attempted to disarm Petitioner. During the altercation, the victim was shot in the leg, but managed to get to his vehicle to try and drive away. Before he could do so, however, Petitioner fired his gun into the victim's vehicle.

A Plantation police officer heard the shots fired and saw people pointing toward a green Oldsmobile leaving the scene of the shooting. The officer pursued the fleeing vehicle. The pursuit

ended when the Oldsmobile crashed into another vehicle. Immediately after the crash, one of the three occupants of the vehicle fled on foot. The other two occupants were detained. Cobb was later brought to the scene of the crash and identified the two men who had been detained as Petitioner's companions at the time of the shooting.

The suspect vehicle was registered in Petitioner's name and a search of the vehicle revealed a letter to Petitioner from his electric company in the glove box, and photographs of Petitioner, his girlfriend, and one of the individuals who had been detained at the scene of the crash. Later, the victim and Cobb identified Petitioner in separate photographic lineups as the shooter, as well as in the photographs found in the suspect vehicle.

Petitioner was tried and found guilty of (1) attempted murder in the first degree as charged in Count I; and (2) shooting at or into an occupied vehicle as charged in Count II. He received life imprisonment for Count I, and 30-years for Count II, based on his classification as a Habitual Felony Offender.

### B. Claim 1

In Claim 1, Petitioner alleges counsel failed to inform the court during the resentencing hearing of a conflict of interest, namely that resentencing counsel had also represented him on his direct appeal to the Fourth DCA. Petitioner contends this constitutes ineffective assistance of counsel. Petitioner raised this issue in his state post-conviction motion and the state responded. [ECF Nos. 12-2 at 286; 12-3 at 42]. It was rejected by the state court [ECF No. 12-3 at 237] and the Fourth DCA. [ECF No. 12-3 at 265]. The state court's determination was correct.

An ineffective assistance of counsel claim raised in a § 2254 petition turns on whether the state court reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). "To succeed on an ineffective-assistance claim under *Strickland*, the § 2254 petitioner must show that his Sixth

Amendment right to counsel was violated because (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense." *Thomas v. Sec'y, Dep't of Corr.*, No. 17-11357-B, 2018 WL 11303563, at *4 (11th Cir. July 31, 2018) (citing *Strickland*, 466 U.S. at 687, 697). Importantly, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A § 2254 petitioner must establish prejudice through demonstrating by a "reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694. Further, the Eleventh Circuit has provided that if "a petitioner's claim may be resolved on the prejudice prong alone, then our precedents instruct that" courts should do so. *Ray v. Alabama Dep't of Corr.*, 809 F.3d 1202, 1208 (11th Cir. 2016).

"Because judicial review of counsel's performance already 'must be highly deferential,' a federal habeas court's review of a state court decision denying a *Strickland* claim is 'doubly deferential.'" *Thomas*, 2018 WL 11303563, at *4 (citing *Cullen v. Pinholster*, 653 U.S. 170, 189–90 (2011)). "In sum, the pertinent inquiry under § 2254(d) 'is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Id.* (internal quotations and citation omitted).

Here, the Court is at a loss to understand how counsel's prior representation of the same individual can constitute a conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980) (to establish ineffectiveness claim based upon a conflict of interest the petitioner must "establish that an actual conflict of interest adversely affected his lawyer's performance."). In any event, it is unnecessary to delve into whether counsel's failure to inform the court of his prior representation of Petitioner constituted deficient performance. Clearly, Petitioner was not prejudiced by counsel's supposed failure to inform the court of the purported conflict. The resentencing hearing involved

only whether Petitioner should be sentenced as a habitual felony offender under Fla. Stat. § 775.084. Nothing defense counsel did, or could have done, would change Petitioner's classification under the statute, and therefore the sentence ultimately handed down. As the resentencing court observed, aside from the underlying offense, between 1995 and 1999 Petitioner had been convicted of: (1) possession of cocaine; (2) delivery of cannabis; (3) possession of cocaine; (4) possession of cannabis; and (5) possession, sale, delivery, purchase, or manufacture of cannabis. [ECF No. 11 at 21–22]. As such, even assuming, *arguendo*, that Petitioner's allegations in Claim 1 were true, there is nothing in front of this Court indicating Petitioner was prejudiced because of counsel's failure to disclose his prior representation of Petitioner. Accordingly, Claim 1 fails.

 C. **Claim 2**

  In Claim 2 Petitioner asserts he received ineffective assistance of counsel because at his resentencing hearing counsel failed to cross-examine the victim of the underlying crime. Petitioner contends counsel

> should have asked the following questions: "What was your description of the culprit that committed this crime the first time you talked to the detective?" "Were you (state witness) influenced in any way to pick the Petitioner out of the picture photo lineup?" "Was the Petitioner the only person in the photo lineup with a braided hair style?" "Is there a possibility that you've mistaken that the Petitioner is the person that shot you? What is your (state witness) reason for wanting the Petitioner to remain in prison for his natural life? Does he (the victim) feel the Petitioner has shown signs of rehabilitation? Do you feel the Petitioner will be able to function in society?

[ECF No. 1 at 6–7]. Petitioner raised this issue in his state post-conviction motion and the state responded. [ECF Nos. 12-2 at 286; 12-3 at 42]. It was denied by the state court [ECF No. 12-3 at 237] and the Fourth DCA. [ECF No. 12-3 at 265]. The state court's determination was correct.

13

Again, Petitioner appears to misconstrue the limits of the resentencing hearing. This was not an opportunity for Petitioner to question the victim regarding his identity, or to relitigate his substantive defenses from trial. The sole issue at resentencing was whether Petitioner should be sentenced as a habitual felony offender. As Respondent notes, this was not an opportunity for Petitioner to re-try his case. The sentencing court would have rejected any attempt by counsel to do so. Thus, Petitioner cannot be prejudiced by his counsel's choice not to have cross-examined the witness regarding facts related to Petitioner's guilt or innocence as if they were at trial, or for questions the victim would have no knowledge of, such as whether Petitioner would function in society. Therefore, the allegations in Claim 2 do not constitute ineffective assistance of counsel.

### D. Claim 3

Claim 3 alleges Petitioner received ineffective assistance of counsel because of counsel's failure to call Dorothy Jones (now Dorothy Kleckley) as a witness as the resentencing hearing to testify as to Petitioner's character, participation and leadership in educational and religious programs in prison, and to "show and prove that prison is a place of rehabilitation … [and that] Petitioner is not a threat to society, but a moral individual who's able to contribute to those who are lost and struggling." [*Id.* at 7–8]. Petitioner avers this testimony would have "encouraged a more lenient sentence." [*Id.* at 9]. Petitioner also raised this issue in his state post-conviction motion and the state responded. [ECF Nos. 12-2 at 286; 12-3 at 42]. It was denied by the state court [ECF No. 12-3 at 237] and the Fourth DCA. [ECF No. 12-3 at 265]. The state court's determination was correct.

Again, here, there is no basis from which this Court can conclude that Petitioner was prejudiced by the absence of Ms. Jones' testimony. The resentencing court heard from Petitioner's other family and friends. The court noted that "I do appreciate the input of not only [the victim], but of Mr. Kleckley's family and friends. He is very blessed to have such a wonderful group of people on his side. However, having considered everything, under all of the circumstances, I am not convinced that the sentence that was previously imposed … should be changed." [ECF No. 11 at 23]. Given the weight of the evidence in the underlying case, the severity of the crime, and Petitioner's extensive prior criminal history, there is no indication in the record—rather, there is clear evidence to the contrary—any additional testimony would have changed the outcome of the resentencing hearing. Accordingly, Plaintiff cannot be said to have been prejudiced by counsel's failure to call Ms. Jones.

### E. Claim 11

In Claim 11 Petitioner asserts the trial court erred in subjecting Petitioner to an enhanced sentence as a habitual felony offender as to Count II. He raised this claim in his fourth motion to correct sentence to which the state responded. [ECF Nos. 12-3 at 292; 12-3 at 300]. The trial court denied the claim and the Fourth DCA affirmed. [ECF Nos. 12-4 at 99; 12-4 at 132].

As Respondent points out, however, this claim "is not cognizable in this federal habeas petition as it is grounded on an interpretation of state law and/or procedure relating to sentencing." [ECF No. 11 at 51]. Respondent points this Court to *Brannon v. Booth*, which provides that "a habeas petition grounded on issues of state law provides no basis for habeas relief … in the area of state sentencing guidelines in particular … federal court cannot review a state's alleged failure to adhere to its own sentencing procedure." 861 F.2d 1507, 1508 (11th Cir. 1988). This case is instructive. Respondent is correct that it is impermissible for a federal court to address the merits

of a petitioner's claim where there is no allegation of a violation of established federal law, but rather, only of state law regarding sentencing guidelines and procedure.

Claim 11 deals with just that. Florida state statutory guidelines on who constitutes a habitual felony offender, and a Florida court's application of the same when sentencing a defendant, provides this Court with no basis to review such a decision. In Claim 11, Petitioner does not allege any constitutional violation or incongruities with federal law. Therefore, this Court may not consider Claim 11 on the merits.

## EVIDENTIARY HEARING

To the extent that Petitioner requests an evidentiary hearing on the merits of his claims, the request should be denied. In deciding whether to hold an evidentiary hearing "a federal court must consider whether such a hearing could entitle an applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Because the applicant would not be entitled to habeas relief, the court is not required to hold an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, because the petitioner can satisfy neither standard, this court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, he may bring this argument to the attention of the District Judge in objections.

## **RECOMMENDATIONS**

Based on the above, it is **RECOMMENDED** that:

1. Petitioner's Federal Habeas Petition, [ECF No. 1], be **DENIED**;
2. Final Judgment be entered in favor of Respondent;
3. No Certificate of Appealability should issue; and
4. that the case be **CLOSED**.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 27th day of June, 2022.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **Robert Kleckley**
**976678**
**South Bay Correctional Facility**
**Inmate Mail/Parcels**
**600 U.S. Highway 27 South**
**South Bay, FL 33493-2233**
**PRO SE**

**All Counsel of Record**