UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-62972-CIV-ALTMAN

**ROBERT KLECKLEY**,

    *Petitioner*,

v.

**STATE OF FLORIDA**,

    *Respondent.*

_____/

## ORDER

In his petition for writ of habeas corpus under 28 U.S.C. § 2254, Robert Kleckley challenges the constitutionality of his state-court convictions for attempted first-degree murder and shooting into an occupied vehicle. *See* Petition [ECF No. 1]. We referred the matter to Magistrate Judge Lisette M. Reid, *see* Order Referring Case [ECF No. 18], who issued a Report and Recommendation ("R&R"), suggesting that we: (1) "dismiss Claims 4, 5, 6, 7, 8, 9, and 10 [of the Petition] as time-barred" and (2) "deny the remaining claims—Claims 1, 2, 3, and 11—on the merits." Order Adopting R&R [ECF No. 20] at 1 (citing R&R [ECF No. 19] at 7, 17). Since it appeared that Kleckley didn't file any objections to the R&R, we adopted Magistrate Judge Reid's recommendations on July 28, 2022. *See id.* at 6 ("The R&R [ECF No. 19] is ACCEPTED and ADOPTED.").

A few days later, Kleckley filed a Motion to Alter or Amend the Judgment pursuant to FED. R. CIV. P. 59(e). *See* Rule 59(e) Motion [ECF No. 22]. Kleckley claimed that he failed to file timely objections because he "never received a copy of Magistrate Judge Reid's R&R." *Id.* at 1. After the Respondent conceded that it "had no good faith basis to contest [Kleckley's] assertion that he did not receive the report and recommendation," Response to Rule 59(e) Motion [ECF No. 24] at 2, we *partially* vacated our Order Adopting R&R and granted Kleckley another opportunity to "file

objections to Magistrate Judge Reid's recommended disposition of Claims 1, 2, 3, and 11," Order Granting in Part Rule 59(e) Motion [ECF No. 25] at 3.[1] Kleckley has now filed his Objections to the R&R. *See* Objections [ECF No. 26]. After conducting a *de novo* review of the Petition, Magistrate Judge Reid's R&R, and Kleckley's Objections, we again adopt the R&R *in full* and overrule the Objections.

## THE LAW

### A. Review of a Report and Recommendation

When a magistrate judge's "disposition" has been properly objected to, district courts must review that disposition *de novo*. FED. R. CIV. P. 72(b)(3). But, when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (cleaned up). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

"A party filing objections must specifically identify those findings objected to and the specific basis for such objections." *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 2005 WL 8155948, at *1 (S.D. Fla. Sept. 21, 2005) (Jordan, J.). Therefore, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

---

[1] We *didn't*, however, allow Kleckley to file objections to Magistrate Judge Reid's recommended disposition of Claims 4–10—the same claims we (and Magistrate Judge Reid) found untimely. We bifurcated the claims in this way because we already "conducted our own *de novo* review of Claims 4–10 and concluded that all of these claims were untimely. If Kleckley *had* objected to the timeliness of these claims, in other words, we would have conducted the same *de novo* review and reached the same conclusion—*viz.*, that Claims 4–10 are time-barred." Order Granting in Part Rule 59(e) Motion [ECF No. 25] at 2 (emphasis in original & cleaned up).

2

### B. Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial counsel and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must

3

show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

## ANALYSIS

We'll start by briefly summarizing what Kleckley's claims are and what Magistrate Judge Reid's R&R said about each. In Claim 1, Kleckley alleges that the attorney who represented him during his state resentencing hearing should have disclosed a conflict of interest that "adversely affected the performance of counsel." Petition at 5–6. In the R&R, Magistrate Judge Reid found that, even if Kleckley's conflict allegations were true, Kleckley wasn't prejudiced by counsel's failure to disclose the conflict. *See* R&R at 13 ("As such, even assuming, *arguendo*, that Petitioner's allegations in Claim 1 were true, there is nothing in front of this Court indicating that Petitioner was prejudiced because of counsel's failure to disclose his prior representation of Petitioner.").

In Claim 2, Kleckey blames his lawyer for failing to cross-examine the victim, Miguel Rodriguez, about his identification of Kleckley as the perpetrator. *See* Petition at 7 ("Petitioner contends that these questions would have shown that Mr. Rodriguez described someone totally different from the Petitioner."). Magistrate Judge Reid roundly rejected this claim, explaining that resentencing "was not an opportunity for Petitioner to question the victim regarding his identity," and adding that "the sentencing court would have rejected any attempt by counsel" to ask the questions Kleckley now proposes. R&R at 14.

In Claim 3, Kleckley chastises his counsel for failing to call Dorothy Jones to testify at his resentencing about "the impact the Petitioner had and has on other inmates as well as citizens in society." Petition at 7. Magistrate Judge Reid again found that Kleckley hadn't shown prejudice since "[t]he resentencing court heard from Petitioner's other family and friends," and because there was "clear evidence" that "any additional testimony would not have changed the outcome of the resentencing hearing." R&R at 15.

Finally, in Claim 11, Kleckley challenges the trial court's finding that he qualified for an enhanced sentence as a "habitual felony offender." Petition at 17. Magistrate Judge Reid determined that this claim merely attacks the state court's adjudication of a state-law matter—and, thus, "is not cognizable in [a] federal habeas petition." R&R at 15–16 (quoting *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)).

Kleckley objects to Magistrate Judge Reid's recommended disposition of all four claims.[2] As to Claim 1, he asks us to *presume* prejudice because he was represented, at the resentencing, by a lawyer against whom he had previously "filed an ineffective assistance of counsel claim[.]" Objections at 2. With respect to Claim 2, he argues that the questions his lawyer should have asked on cross-examination of the victim were necessary "to determine if Petitioner was a danger to society," and (he adds) the "validity of his conviction" was "fair game" in any hearing about whether he qualified as a "habitual felony offender." *Id.* at 3–4. As for Claim 3, he contends that the cumulative nature of Dorothy Jones's testimony "is not a [basis] for denial." *Id.* at 5. Finally, with respect to Claim 11, he

---

[2] Kleckley also objects to our decision to limit the scope of his objections to Claims 1, 2, 3, and 11, and has filed a motion for reconsideration on this issue. *See* Second Rule 59(e) Motion [ECF No. 27] at 2 ("Petitioner contends that it would be manifestly unfair to prevent him from objecting to the R&R, where the factual question would evade review."); *see also* Objections at 8 ("Petitioner brings to the Honorable Court's attention that he does not waive his right to object to claims 4, 5, 6, 7, 8, 9, and 10."). Kleckley contends that he should still be allowed to object to these claims because "the Court overlooked that the timeliness determination hinges on a factual matter." Second Rule 59(e) Motion at 1.
    Timeliness, however, is a legal issue (or, at least, a mixed question of law and fact). *Cf. Joseph v. Conway*, 567 F. App'x 56, 57–58 (2d Cir. 2014) ("The timeliness of a habeas petition presents a question of law that we review *de novo*. . . . [We] ultimately review *de novo* the legal determination of whether on those facts the petition was timely filed[.]"). In any event, as we explained in our prior order, there's no dispute on the central timeliness question we confront here—*viz.*, whether the state court issued one (or multiple) judgments—because the record is clear that the state court never amended its original judgment after resentencing. *See* Order Adopting R&R at 5 ("[T]he state court never superseded its original judgment (from June 12, 2000) with a new judgment."). That said, we acknowledge that Kleckley has preserved his objections to Claims 4–10 for the purposes of any future appeal. *See* 11th CIR. R. 3-1 ("A party failing to object to a magistrate judge's findings or recommendations . . . waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]").

5

maintains that his sentence as a habitual felony offender "exceeds the maximum authorized by law," which means that he's been illegally detained "in violation of the Constitution." *Id.* at 7. We'll address each objection in turn.

### A. Claim 1

Kleckley's first claim is that the attorney who represented him during his resentencing, Joseph Chloupek, was ineffective because he was operating under a conflict of interest. The source of that conflict goes back a number of years—to when Chloupek represented Kleckley on his direct appeal. *See* Direct Appeal Initial Brief [ECF No. 12-1] at 47 (submitted on behalf of Kleckley by "Joseph R. Chloupek, Assistant Public Defender"). After Kleckley lost that appeal, he filed a habeas petition in which (among other things) he challenged Chloupek's failure to order the transcripts of his sentencing hearing. *See* Petition at 5 ("The bases for such conflict in said case had arisen with regard to a Habeas corpus Petitioner filed on or about November 29, 2001, alleging ineffective assistance of Appellant Counsel on Mr. Chloupek[.]" (errors in original)). And the conflict is actual and ongoing, Kleckley says, because he *prevailed* in that collateral attack—which is to say, the Fourth DCA agreed with Kleckley that Chloupek had, in fact, rendered ineffective assistance. *See Kleckley v. State*, 810 So. 2d 1081, 1081 (Fla. 4th DCA 2002) ("This case involves Robert Kleckley's petition for writ of habeas corpus alleging ineffective assistance of appellate counsel for failing to order or have transcribed the sentencing transcripts. . . . We find Kleckley's petition legally sufficient, and grant relief."). The Fourth DCA further held that "the trial court may appoint appellate counsel to assist Kleckley with preparing the record on appeal and his initial brief" for a subsequent appeal that would "address sentencing only." *Ibid.* As far as we can tell, the state trial court never gave Kleckley a new appellate lawyer (nor did Kleckley request one), and Kleckley himself didn't challenge the legality of his sentence until, at least, January 12, 2006. *See* Motion to Correct Illegal Sentence [ECF No. 12-2] at 29–31. When the Fourth DCA ultimately held that Kleckley *should* be resentenced on Count 2, *see Kleckley v. State*, 4 So.

6

3d 1290, 1290 (Fla. 4th DCA 2009), Chloupek once again represented him at his resentencing.

Magistrate Judge Reid was "at a loss to understand how counsel's prior representation of the same individual can constitute a conflict of interest." R&R at 12. But her recommendation *mainly* focused on Kleckley's failure to show prejudice under *Strickland*. *See ibid.* ("Clearly, Petitioner was not prejudiced by counsel's supposed failure to inform the court of the purported conflict."). We agree with Magistrate Judge Reid's result—though (as we explain in note 3, *infra*) we quibble a bit with how she got there.

In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court "establishe[d] a two-part test that we use to evaluate whether an attorney is constitutionally ineffective due to a conflict of interest. To show ineffectiveness under *Cuyler*, a petitioner must demonstrate: (a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance." *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001) (citing *Cuyler*, 446 U.S. at 348–49). To show an "actual conflict of interest," the petitioner "'must make a factual showing of inconsistent interests' or point to 'specific instances in the record' to suggest an actual impairment of his or her interests." *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987)). A "speculative or merely hypothetical conflict" of interest will not suffice. *Lighthourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987). Even if defense counsel "labored under an actual conflict of interest," the petitioner still needs to establish that "this conflict adversely affected the representation he received." *Reynolds*, 253 F.3d at 1343. The Eleventh Circuit uses a three-part test to evaluate an alleged conflict's "adverse effects." It asks: (1) whether "the defense attorney could have pursued [an] alternative strategy"; (2) whether "[the] alternative strategy was reasonable"; and (3) whether "the alternative strategy was not followed because it conflicted with the attorney's external

loyalties." *Ibid.* (citing *Freund*, 165 F.3d at 860).³

We'll assume (without deciding) that Kleckley's prior successful challenge of Chloupek's representation resulted in an actual conflict of interest. Still, Claim 1 fails because Kleckley has failed to allege that this conflict "adversely affected counsel's representation." *McConico v. State of Ala.*, 919 F.2d 1543, 1549 (11th Cir. 1990). In the Petition, Kleckley "asserts this actual conflict of interest adversely affected the performance of counsel . . . because counsel limited Petitioner's ability to bring evidence to obtain a lesser sentence." Petition at 6; *see also* Objections at 2 ("The Respondent also overlooked that the habitual sentence is discretionary not mandatory. And the sentencing judge made it clear that he based his decision on the testimony he heard that day. Petitioner alleged areas where counsel was deficient [due] to the actual conflict."). In saying so, however, Kleckley identifies two—and only two—additional sources of evidence that (in his view) Chloupek *should have* pursued at the resentencing: *One*, he says that Chloupek should have "cross-examine[d] state witness Miguel Rodriguez" *both* about his in-court identification of Kleckley during the trial *and* about Kleckley's (alleged) rehabilitation; *two*, he claims that Chloupek should have called Dorothy Jones as a defense witness. Petition at 6. These are, of course, the very same arguments Kleckley has advanced in Claims 2 and 3 of his Petition—both of which we address (and reject) in more detail below.

Suffice it to say here, though, that Kleckley cannot prevail on Claim 1 because neither of these proposed strategies were reasonable—and because the second wasn't really an *alternative* strategy at all.

---

³ Both Kleckley and Magistrate Judge Reid appear to conflate *Cuyler*'s "adverse effect" requirement with *Strickland*'s "prejudice" prong. But "an adverse effect resulting from a conflict is not the same thing as prejudice in the run-of-the-mill *Strickland* sense." *Ochoa v. United States*, 45 F.4th 1293, 1299 (11th Cir. 2022) (cleaned up). And the Eleventh Circuit has been clear that "prejudice is presumed only if the defendant demonstrates that an actual conflict of interest adversely affected his lawyer's performance." *Freund*, 165 F.3d at 860 (cleaned up); *see also United States v. Novaton*, 271 F.3d 968, 1011 (11th Cir. 2001) ("In the absence of a showing of an 'adverse effect,' prejudice is not presumed to flow from a conflict of interest."); *Ruffin v. Kemp*, 767 F.2d 748, 752 (11th Cir. 1985) ("The case law is clear that actual prejudice need not be shown. Once a habeas petitioner has proved the existence of an actual conflict, only an adverse impact on the attorney's performance need be shown.").

With respect to the first—the cross of Mr. Rodriguez—there simply was no opportunity to cross-examine the victim at the resentencing, which was all about whether Kleckley was (as the State argued) a "habitual felony offender," and which had nothing to do with whether the victim was telling the truth when he identified Kleckley as the perpetrator all those years before. This latter question—about the veracity of the victim's identification—was *conclusively* resolved by the jury's verdict at trial. *See* Verdict [ECF No. 12-1] at 93–96 (showing that the jury, consistent with the victim's testimony, found Kleckley guilty of *both* charges). We cannot say that Kleckley was "adversely affected" by his lawyer's failure to do something he couldn't have done in any case. *See, e.g.*, *United States v. Mers*, 701 F.2d 1321, 1331 (11th Cir. 1983) ("Failing to adopt a strategy . . . may well give rise to an actual conflict of interest, but to do so the strategy *must have been an option realistically available to trial counsel*." (emphasis added)); *see also Tuomi v. Sec'y Fla. Dep't of Corr.*, 980 F.3d 787, 797 (11th Cir. 2020) ("Tuomi cannot show adverse effect because [filing] a Rule 3.800 motion was not a viable alternative under Florida law. . . . Thus, Tuomi's counsel pursued the only form of relief available to Tuomi under the circumstances, which was to seek to withdraw his negotiated plea on the ground that it was involuntary.").

Nor would it have made sense for Chloupek to question the victim about Kleckley's character. In his statement at the resentencing, the victim expressed his unambiguous view that Kleckley should be resentenced to *life in prison*. *See* Resentencing Tr. [ECF No. 13-2] at 27 ("I wish that the sentence stay as a life sentence because of what I've been through. This whole situation really changed my life. . . . And at this moment I strongly feel in my heart because of everything I've been through and what was decided in Court that the sentence stay and he keep a life sentence."). Counsel thus had no reason to believe that the victim might have been open to any suggestion that Kleckley had been (as he now claims) fully reformed. And any questions along those lines may very well have backfired. Again, Kleckley cannot have been "adversely affected" unless he can point to an "alternative strategy" that would have been *reasonable* for counsel to pursue. *See Reynolds*, 253 F.3d at 1343 (asking, among other

9

things, whether "[the] alternative strategy was reasonable").

As for the second thing Kleckley thinks Chloupek should've done—call Ms. Jones to the stand during the resentencing—Kleckley has been clear that Ms. Jones would've simply reiterated the very same things the *four other* defense witnesses had already said.[4] *See* Petition at 7 ("Petitioner contends [Dorothy Jones] would have testified to the impact the Petitioner had and has on other inmates as well as citizens in society. [Jones] would have testified to the classes the Petitioner facilitated[.]"). But, despite hearing from those four other witnesses, the state judge (as we're about to see) found that Kleckley qualified as a "habitual felony offender" and sentenced him accordingly. Resentencing Tr. [ECF No. 13-2] at 52–53 ("I find it necessary to sentence the defendant for [the] protection of the public as [a] habitual felony offender."). Calling a fifth witness to repeat what these four witnesses had already said—in testimony the state judge had already rejected—isn't an "alternative" strategy at all, much less a *reasonable* one. In other words, an alternative strategy cannot be reasonable if it would have added nothing at all. *See Freund*, 165 F.3d at 860 (defining a "reasonable alternative strategy" as one which "possess[es] sufficient substance to be a viable alternative" (quoting *United States v. Fahey*, 769 F.3d 829, 836 (1st Cir. 1985))). What's more, even if we assume that putting Ms. Jones on the stand would've constituted an "alternative strategy"—and even if we agree that calling Ms. Jones would've been a *reasonable* thing to do—Kleckley hasn't suggested that Chloupek failed to call Ms. Jones *because* doing so would have "conflicted with the attorney's external loyalties." *Reynolds*, 253 F.3d at 1343. And how could he—when Chloupek *did* elicit substantially the same testimony from *four other witnesses*?

We therefore **OVERRULE** Keckley's objection on Claim 1.

B. Claim 2

In Claim 2, Kleckley argues that counsel was ineffective "for failing to cross examine [the] State witness" at the resentencing hearing. Petition at 6. Kleckley proposes that counsel should have

---

[4] For more detail on all this, see our discussion in Section C, *infra*.

10

asked the witness—the victim in this case—questions about (1) *how* he identified Kleckley as the perpetrator and (2) *whether* he thought Kleckley had been rehabilitated. *See id.* at 6–7 ("Petitioner contends counsel should have asked the following questions: 'What was your description of the culprit that committed this crime the first time you talked to the detective?' . . . 'Does he (the victim) feel the Petitioner has shown signs of rehabilitation?'"). As Magistrate Judge Reid explained, Claim 2 suffers from a dispositive flaw:

> Again, Petitioner appears to misconstrue the limits of the resentencing hearing. This was not an opportunity for Petitioner to question the victim regarding his identity, or to relitigate his substantive defenses from trial. The sole issue at resentencing was whether Petitioner should be sentenced as a habitual felony offender. As Respondent notes, this was not an opportunity for Petitioner to re-try his case. The sentencing court would have rejected any attempt by counsel to do so. Thus, Petitioner cannot be prejudiced by his counsel's choice not to have cross-examined the witness regarding facts related to Petitioner's guilt or innocence as if they were at trial, or for questions the victim would have no knowledge of, such as whether Petitioner would function in society. Therefore, the allegations in Claim 2 do not constitute ineffective assistance of counsel.

R&R at 14. Kleckley resists Magistrate Judge Reid's conclusion, asserting that "[t]he questions asked were to expose facts that clearly bring into issue the validity of the conviction, as the same was both fair game given statements of the prosecution and for consideration to impose a habitual offender sentence." Objections at 3–4. We disagree.

Under Florida and federal law, "a defendant's rights at sentencing differ considerably from his pre-conviction rights." *Peters v. State*, 984 So. 2d 1227, 1232 (Fla. 2008) (quoting *United States v. Jackson*, 453 F.3d 302, 305 (5th Cir. 2006)). Put bluntly, "the defendant has no right to confront witnesses at sentencing." *United States v. DeAngelis*, 243 F. App'x 471, 474 (11th Cir. 2007). It's true that a defendant "does have a right to rebut information relevant to his character and record that is admitted against him at the sentencing hearing." *Muhammad v. Sec'y, Fla. Dep't of Corr.*, 733 F.3d 1065, 1074 (11th Cir. 2013). But the victim's testimony at resentencing was limited to a brief statement, in which (as we've said) he asked that Kleckley be resentenced to life in prison. *See* Resentencing Tr. [ECF No. 13-2] at

11

27 ("I wish that the sentence stay as a life sentence because of what I've been through. This whole situation really changed my life. . . . And at this moment I strongly feel in my heart because of everything I've been through and what was decided in Court that the sentence stay and he keep a life sentence.").[5] Indeed, a careful review of the victim's statement reveals that he offered no factual details that could be rebutted or challenged on cross-examination at all. *See generally ibid.* And (notably) Kleckley had a full opportunity to allocute at resentencing. *See id.* at 45–47. Since Kleckley had no right to transform his resentencing into a redo of his trial, counsel wasn't ineffective for failing to conduct a cross-examination.[6] *See Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("[Counsel] is not ineffective for failure to raise a meritless argument."). We therefore **OVERRULE** Kleckley's objection as to Claim 2.

### C. Claim 3

In Claim 3, Kleckley says that counsel was ineffective for not calling Dorothy Jones to testify at his resentencing. According to Kleckley, Jones would have provided essential testimony about "the classes Petitioner facilitated," "the degrees the Petitioner had earned," "the effects he has had on other inmates and citizens," and "his plans to create a non-profit organization to help Youthful Offenders and rehabilitated men and women"—all of which (he insists) would have convinced the state court that "the Petitioner is not a threat to society, but a moral individual who's able to contribute to those who are lost and struggling." Petition at 7–8. Noting that the state court had already "heard from Petitioner's other family and friends," Magistrate Judge Reid determined that there was no reasonable

---

[5] As we've explained, Kleckley never indicates that the victim would've supported his rehabilitation narrative at all. And that's probably because, as Magistrate Judge Reid noted, there's no reason to believe that the victim had any personal knowledge of any supposed reformation in Kleckley's character. In any event, the victim's *specific* request at resentencing—that Kleckley be resentenced to *life in prison*—strongly suggests that, if asked, the victim would *not* have supported Kleckley's position.
[6] As an aside, we note that Kleckley's trial counsel extensively cross-examined the victim at trial about his identification, rendering any additional cross at resentencing fairly redundant. *See* Trial Tr. [ECF No. 13-1] at 278–80, 284–86.

probability that Jones's "additional testimony would have changed the outcome of the resentencing hearing." R&R at 15. Kleckley objects and maintains that Jones's testimony "was corroborative but not cumulative." Objections at 5.

We adopt Magistrate Judge Reid's conclusion. After all, "even if [Jones's] testimony had been presented, there is no reasonable probability that the outcome would have changed[.]" *Clisby v. State of Ala.*, 26 F.3d 1054, 1057 (11th Cir. 1994). The purpose of Kleckley's resentencing was simple: to determine whether he should be resentenced as a habitual felony offender on Count 2. *See Kleckley*, 4 So. 3d at 1290 ("We reverse the summary denial of appellant's claim that his habitual sentence imposed for count two is illegal[.]"). Under Florida law, the resentencing court had the discretion *not* to impose a "habitual felony offender" sentence—even if Kleckley otherwise qualified for that designation—so long as it determined "that it is not necessary for the protection of the public to sentence a defendant . . . as a habitual felony offender[.]" FLA. STAT. § 775.084(4)(e); *see also Sol v. State*, 268 So. 3d 749, 750 (Fla. 4th DCA 2019) ("Section 775.084 also states that the trial court must sentence the defendant as a habitual felony offender unless the court finds that such a sentence is not necessary for the protection of the public." (cleaned up)).

Kleckley's counsel called four witnesses during the resentencing hearing, and all four provided the same (purportedly crucial) testimony that Kleckley now says Dorothy Jones would have given. Alva Nelson testified that Kleckley "was like a mentor to my son," and that, during his time in prison, Kleckley "gave his life to Christ" and began "studying law and singing in the choir." Resentencing Tr. [ECF No. 13-2] at 29–30. Ventry Rich testified that Kleckley "took a lot of courses since he's been [in prison]. He [has] finished his high school education. He [has] won several certificates since [he's] been there." *Id.* at 35. Kimberley Kleckley explained that her brother helped her get a GED and has "totally changed. He has accomplished so much for himself" while in prison. *Id.* at 38, 40. And Shelia Major testified that Kleckley had devoted himself to his religion, and that, if he were released, she would've

13

support him financially until he could find permanent employment. *Id.* at 43–44. Kleckley himself then took the stand and confirmed that his goal after leaving prison would be to "further my education" and to speak to "battered kids or troubled kids so they won't make the same mistakes I made." *Id.* at 46. Despite all this testimony about Kleckley's progress as an individual and his exemplary personal, academic, and spiritual growth, the resentencing judge found it "necessary to sentence the defendant for protection of the public as [a] habitual felony offender." *Id.* at 52–53.

Given the testimony Kleckley already presented at the resentencing, we agree with Magistrate Judge Reid that Jones's testimony would have been quite cumulative. Again, all four witnesses spoke about the education Kleckley received in prison, his positive relationship with family and friends, his religious awakening, and the various other ways in which he'd changed (for the better) while in prison. *See generally id.* at 28–45. Kleckley also talked about his own accomplishments in prison and discussed his plans to mentor troubled youth in the future. *See id.* at 45–46. In the face of all this, the state judge was unmoved. *See id.* at 52–53. And Kleckley's already told us that Dorothy Jones's testimony would have merely repeated many of the same themes the state judge already rejected: that, for example, "Petitioner is not a threat to society, but a moral individual who's able to contribute to those who are lost and struggling." Petition at 8.

Since Jones's testimony would have been "merely cumulative of the humanizing evidence [counsel] actually presented[,] adding it to what was already there would have made little difference." *Wong v. Belmontes*, 558 U.S. 15, 22 (2009); *see also Downs v. State*, 740 So. 2d 506, 516 (Fla. 1999) ("[T]o the extent Downs offers additional facts not previously presented at the resentencing hearing, such facts are cumulative to the evidence presented by Downs during the resentencing proceeding and, therefore, are insufficient to warrant relief under *Strickland*."). We thus **OVERRULE** Kleckley's third objection.

### D. Claim 11

Claim 11 challenges the *legality* of the state court's finding that Kleckley qualified as a habitual felony offender. *See* Petition at 18 ("Petitioner avers that from the face of the record, the trial court violated the Petitioner's due process when the trial court nullified the clearly legislative intent under [FLA. STAT. §] 775.084(1)(a)3, which excludes felonies committed pursuant to section 893.13[.]"). Magistrate Judge Reid found that Claim 11 solely concerns "Florida state statutory guidelines on who constitutes a habitual felony offender, and a Florida court's application of the same when sentencing a defendant provides this Court no basis to review such a decision." R&R at 16.

That's exactly right. "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *see also Branan*, 861 F.2d at 1508 ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976))). For this reason, our Circuit's district courts uniformly refuse to review a state court's imposition of a habitual-felony-offender sentence. *See, e.g., Moore v. Sec'y of Fla. Dep't of Corr.*, 2011 WL 1576210, at *6 (M.D. Fla. Apr. 26, 2011) (Howard, J.) ("Moreover, to the extent that Petitioner claims his habitual felony offender sentence is illegal due to the trial court's lack of subject matter jurisdiction, such a claim presents an issue purely of state law that is not cognizable on federal habeas review."); *Jorge v. Jones*, 2018 WL 10788538, at *31 (S.D. Fla. Oct. 22, 2018) (White, Mag. J.) ("[A]ny challenge to the validity of the petitioner's enhanced sentence as a habitual felony offender is not cognizable in this federal proceeding. It is well settled that a state's interpretation of its own rules or statutes does not raise a federal constitutional issue unless it rises to a level of denial of fundamental due process."), *report and recommendation adopted*, 2018 WL 10788536 (S.D. Fla. Dec. 19, 2018) (King, J.). And, while Kleckley obliquely claims that his "habitual felony offender sentence does violate the

15

United States Constitution," he never suggests that he was denied due process. Objections at 7. And that's probably because, whatever the outcome, the state court gave Kleckley a fair shot at resentencing: He afforded him competent counsel, allowed him to testify, and permitted him to call four witnesses who would support his view of the equities. *See generally* Resentencing Tr. [ECF No. 13-2]. Kleckley's Claim 11 objection is, therefore, **OVERRULED**.

### EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record precludes habeas relief under the limitations of § 2254(d), a district court is not required to hold an evidentiary hearing." *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (cleaned up); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Since the transcript of Kleckley's resentencing fully disposes of his objections, we don't think we'd benefit from any further factual development.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only where the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because reasonable jurists wouldn't find our resolution of the Petition's claims to be debatable or wrong, we **DENY** any request for a COA.

\* \* \*

Having conducted a *de novo* review of the R&R, the record, and the applicable law, we hereby

**ORDER AND ADJUDGE** as follows:

1. Magistrate Judge Reid's R&R [ECF No. 19] is **ACCEPTED and ADOPTED**.

2. Kleckley's Objections to the R&R [ECF No. 26] are **OVERRULED**. Claims 1, 2, 3, and 11 of the Petition [ECF No. 1] are **DENIED**.

3. Any requests for an evidentiary hearing or a certificate of appealability are **DENIED**.

4. Any other pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**.

5. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida this 20th day of October 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Robert Kleckley, *pro se*
      counsel of record