UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-62972-CIV-ALTMAN

**ROBERT KLECKLEY**,

   *Petitioner*,

v.

**STATE OF FLORIDA**,

   *Respondent.*

_____/

## **ORDER**

Our Petitioner, Robert Kleckley, has filed a Motion to Amend or Alter Judgment under Rule 59(e). *See* Rule 59(e) Motion [ECF No. 29]. We won't repeat here the quirky procedural history of this case. To sum up quickly, though: Magistrate Judge Reid issued a Report and Recommendation ("R&R"), in which she suggested that we deny all eleven of the claims Kleckley had asserted in his § 2254 petition. *See Kleckley v. Florida*, 2022 WL 3566908, at *9 (S.D. Fla. June 27, 2022) (Reid, Mag. J.). We ultimately adopted Magistrate Judge Reid's R&R in two parts. *First*, after a *de novo* review, we found that Claims 4 through 10 of the Petition were time-barred under 28 U.S.C. § 2244(d)(1)(A), because they challenged (alleged) errors the state court made during Kleckley's original trial (way back in 2000) and because "there's been no intervening judgment since the state court issued its original judgment on June 12, 2000." *Kleckley v. Florida* (*Kleckley I*), 2022 WL 2980460, at *3 (S.D. Fla. July 28, 2022) (Altman, J.). *Second*, with respect to the four remaining claims, we overruled Kleckley's objections and adopted Magistrate Judge Reid's recommendation that we deny those claims on the merits. *See Kleckley v. Florida* (*Kleckley II*), 2022 WL 11607203, at *9 (S.D. Fla. Oct. 20, 2022) (Altman, J.). Kleckley now contends that we: (1) "overlooked specific portions of the record that proves that [Claims 4–10] are timely under AEDPA," and (2) erred in denying Claims 1, 2, 3, and 11. Rule 59(e) Motion at 1.

After careful consideration, and for the reasons set out below, we **DENY** Kleckley's Rule 59(e) Motion. In doing so, however, we'll **GRANT** Kleckley a certificate of appealability on two issues—both limited to Kleckley's contention that Claims 4 through 10 are timely because (in his view) the state court's resentencing created a new judgment.

## THE LAW

"The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (cleaned up); *see also Eveillard v. Nationstar Mortg. LLC*, 2015 WL 1191170, at *5 (S.D. Fla. Mar. 16, 2015) (Bloom, J.) (noting that "an intervening change in controlling law" may serve as a basis for Rule 59 relief). Parties thus "cannot use a Rule 59(e) motion to relitigate old matters, raise argument[s] or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005); *see also Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) ("The purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed.").

## ANALYSIS

### I. The Untimely Claims (Claims 4–10)

Before addressing Kleckley's new Rule 59(e) arguments, we'll briefly summarize what we've said before on the all-important question of timeliness. It's undisputed that Kleckley was "originally sentenced on June 12, 2000 to life imprisonment on Count 1, and, because he was determined to be a 'habitual felony offender,' to thirty years for Count 2." *Kleckley I*, 2022 WL 2980460, at *3 (cleaned up). It's also undisputed that, after his sentence, Kleckley filed in state court a motion under FLA. R. CRIM. P. 3.800(a), arguing that his sentence on *Count 2* was illegal because the judge had improperly applied the "habitual felony offender" enhancement. *Id.* at *2 (citing 3.800(a) Motion [ECF No. 12-2] at 147–49). Although the state postconviction court originally denied this motion, the Fourth DCA later "reverse[d] the summary denial of appellant's claim that his habitual sentence imposed for count

2 is illegal and remand[ed] for the attachment of record portions conclusively refuting his claim or for resentencing." *Kleckley v. State*, 4 So. 3d 1290, 1291 (Fla. 4th DCA 2009).

Back on remand, the state postconviction court opted to hold a resentencing hearing on April 9, 2010. *See Kleckley I*, 2022 WL 2980460, at *3. During that resentencing, "the State submitted Kleckley's certified prior convictions[,] which showed that Kleckley had been 'convicted of at least two felony offenses[,] [a]t least one of them [being] a violation of some statute other than FLA. STAT. § 893.13[.]'" *Ibid.* (quoting Resentencing Hr'g Tr. [ECF No. 13-2] at 52 (cleaned up)). After the resentencing, the state court "*again* determined that Kleckley was a habitual felony offender and *again* sentenced him to thirty years on Count 2." *Ibid.* (emphasis in original). In our prior order, we emphasized that the "[resentencing] court . . . signed a new *sentencing order* as to Count 2—but (notably) *did not* issue a new judgment." *Ibid.* (emphasis in original). Based on this finding—and our review of the state-court record—we concluded that any errors stemming from Kleckley's original trial (*i.e.*, Claims 4 through 10) were time-barred under § 2244(d)(1)(A) because Kleckley was "still in custody pursuant to his *original* June 12, 2000 judgment[.]" *Ibid.* (emphasis added & cleaned up).

Kleckley now argues that we made several errors in arriving at this conclusion. *First*, he says that the April 9, 2010 resentencing was "a completely *de novo* proceeding" and that it was not—as we suggested—merely a ministerial hearing to correct a "clerical error." Rule 59(e) Motion at 2. *Second*, he contends that, because the resentencing was a *de novo* proceeding, the state court "rendered a new judgment and sentence order"—and that we were wrong to say otherwise. *Id.* at 2–3. *Third*, he insists that this "new" judgment "reset the limitation period for all Petitioner's claims"—and that, as a result, we must consider Claims 4 through 10 on the merits. *Id.* at 5. In our view, though, Kleckley is (and always has been) incarcerated pursuant to the *original* judgment from 2000. Indeed—as we're about to see—even if the resentencing *did* result in a new judgment, that new judgment didn't reset the limitations period in a way that would allow Kleckley to challenge the alleged constitutional errors that

3

may have occurred in his underlying trial.

### A. The Resentencing Didn't Impose a New Judgment

As a preliminary matter, we agree with Kleckley that the April 9, 2010 resentencing was a *de novo*—and not a ministerial—proceeding. *See Davis v. State*, 227 So. 3d 137, 139 (Fla. 4th DCA 2017) ("[W]hen a sentence has been reversed as illegal and the case is remanded for resentencing, a defendant is entitled to the full panoply of due process considerations on resentencing."). But that doesn't necessarily mean that it resulted in a new judgment. As the Eleventh Circuit has explained, when deciding whether a resentencing hearing ended in a new judgment, we should keep in mind that "the magnitude and type of change to the sentence is beside the point." *Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321, 1326–27 (11th Cir. 2017) (en banc). The only question is whether the state court issued a *new* judgment "authorizing [the petitioner's] confinement[.]" *Ibid.* And the record in our case is clear that the resentencing court issued no new judgment. The April 9, 2010 resentencing, after all, was limited to one discrete question—whether Kleckley could be sentenced as a "habitual felony offender" on Count 2. *See Kleckley*, 4 So. 3d at 1291 ("We reverse the summary denial of appellant's claim that his habitual sentence imposed for count two is illegal and remand for . . . resentencing."); Resentencing Hearing Tr. [ECF No. 13-2] at 5 ("[The Court:] Now, if I am reading this right, though, the resentencing is only on Count Two.").[1] In other words, the resentencing had *nothing* to do with the propriety of Kleckley's life sentence as to Count 1—and *nothing* to do with the viability of Kleckley's conviction. It was, instead, an opportunity for the State to prove that, as to *Count 2*, Kleckley qualified

---

[1] On appeal, Kleckley argued that the resentencing court had failed to consider the propriety of his sentence as to Count 1. *See* Resentencing Initial Brief [ECF No. 12-2] at 251 ("[Kleckley] respectfully requests this Honorable Court to enter an order remanding this cause to the trial court for a hearing on the defective verdict issue [on Count 1]."). The Fourth DCA rejected this argument and summarily affirmed the resentencing court's decision to resentence Kleckley only on Count 2. *See Kleckley v. State*, 86 So. 3d 1135, 1135 (Fla. 4th DCA 2012). And we're not free to reconsider the state courts' rulings on issues of state law. *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").

as a "habitual felony offender" under the statute. If the State could meet its burden of proof at that resentencing, the hearing would then create a forum for the defense to show that an enhanced sentence was "not necessary for the protection of the public." *Kleckley II*, 2022 WL 11607203, at *7 (citing FLA. STAT. § 775.084(4)(e)) (cleaned up).

Kleckley nevertheless insists that his resentencing resulted in *both* a new sentence *and* a new judgment: "Petitioner," he says, "received (1) a new adjudication of guilt on Count One and Count Two, (2) a new judgment and restitution order, (3) a new written judgment and sentence order and (4) a new commitment to custody of the department of corrections order"—which, he adds, establishes that a "new judgment and sentence was rendered in this case." Rule 59(e) Motion at 2. We'll address—and reject—each of these four points in order.

*First*, it's just not the case that Kleckley "received a new adjudication of guilt" on Counts 1 and 2 at the resentencing. As we've explained, the resentencing had *nothing* to do with Count 1 and was expressly limited to the habitual-felony-offender aspect of Count 2. *See Kleckley*, 4 So. 3d at 1291; *Kleckley II*, 2022 WL 11607203, at *7. A judgment in Florida is "the adjudication by the court that the defendant is guilty or not guilty." FLA. R. CRIM. P. 3.650. That plainly occurred on June 12, 2000, when the state court declared that Kleckley had been "tried and found guilty" of Counts 1 and 2. *See* 2000 Judgment [ECF No. 12-1] at 17. But no state or federal court ever vacated that judgment as to either count, nor was Kleckley ever retried (or found guilty again) on either count. The state-court record thus establishes that the *only* "adjudication by the court that the defendant is guilty or not guilty" occurred on June 12, 2000.[2]

---

[2] Kleckley claims that the resentencing judge issued an "oral pronouncement during the *de novo* resentencing," which (he says) "superseded the written June 12, 2000 judgment." Rule 59(e) Motion at 3. Three problems with this. *One*, under Florida law, "[a] judgment of guilty or not guilty of a felony must be in a written [or electronic] record that is signed by the judge and recorded by the clerk of the court[.]" FLA. STAT. § 921.241(2)(a); *see also* FLA. R. CRIM. P. 3.670 ("If a defendant is found guilty, a judgment of guilty . . . shall be rendered in open court *and in writing*, signed by the judge, filed and recorded." (emphasis added)). So, this supposed "oral pronouncement" could not have qualified as a

*Second*, a new restitution order doesn't "reset" the limitations period under § 2244(d)(1)(A) because an order to pay restitution doesn't authorize a habeas petitioner's *confinement*. It's true that, after the resentencing hearing, the state court entered a (confusingly titled) "Judgment and Restitution Order." *See* Restitution Order [ECF No. 12-2] at 234–35. Title aside, though, no part of that order authorized Kleckley's *confinement. See ibid.*; *see also Patterson*, 849 F.3d at 1328 ("[T]he only judgment that matters is the judgment that authorizes [the petitioner's] confinement[.]"). Instead, it's clear from the face of the "Judgment and Restitution Order" that it did little more than direct Kleckley to "pay restitution costs for the benefit of the aggrieved party herein." Restitution Order [ECF No. 12-2] at 234. And, since an order of restitution doesn't result in imprisonment—it requires only the payment of money—it doesn't qualify as a "judgment" under § 2244. *See Patterson*, 849 F.3d at 1327 (rejecting the argument that "the removal of a fine or restitution obligation would trigger a new round of federal habeas review"); *Chamblee v. Florida*, 905 F.3d 1192, 1195 n.5 (11th Cir. 2018) ("Even if the state trial court re-imposes the $50 fine, it will not create a 'new judgment' or have any effect on the 2010 judgment because the $50 fine is unrelated to the authorization of Chamblee's confinement.").

*Finally*, we'll address Kleckley's third and fourth points together because they rely on similar facts. Pointing to a collection of documents in the state-court record—*e.g.*, a set of fingerprints, a "Uniform Commitment to Custody of Department of Corrections," a sentencing order (as to Count 2), a criminal scoresheet (again for Count 2), a restitution order, and a "Circuit Court Disposition Order," *see* Resentencing Documents [ECF No. 12-2] at 225–37—Kleckley insists that the resentencing *did* result in a new judgment, *see* Rule 59(e) Motion at 2 ("Rather, as the record evinces, Petitioner underwent a full resentencing resulting in a new judgment and conviction.").

---

new judgment. *Two*, while the resentencing judge *did* (as Kleckley notes) impose sentence orally on Count 2, he couldn't have issued a new judgment since he didn't re-adjudicate Kleckley "guilty or not guilty" of either count at that hearing. *See* Resentencing Hr'g Tr. [ECF No. 13-2] at 50–53. *Three*, the resentencing judge couldn't have superseded the June 12, 2000 judgment as to Count 1 because (again) the resentencing had *nothing to do with* Count 1.

6

Kleckley's right that both the sentencing order and the "Uniform Commitment" resemble a "judgment." The resentencing order, for instance, "commit[s]" Kleckley "to the custody of the Department of Corrections" for 30 years, *see* Resentencing Order [ECF No. 12-2] at 229, and the "Uniform Commitment" directs the Respondent "to keep and safely imprison the said defendant for a term of said sentence," Uniform Commitment [ECF No. 12-2] at 228. From *Patterson*, however, we know that "the only judgment that matters" for timeliness purposes is "the judgment that authorizes [Kleckley's] confinement[.]" 849 F.3d at 1328. What *Patterson* teaches us, then, is that, to restart the habeas clock, a habeas petitioner in Kleckley's shoes must show two things: (1) a judgment under Florida law that (2) authorizes his confinement. So, even if these documents authorized Kleckley's confinement, we must still ask whether they constitute a new judgment on Count 2—and, if they do, whether they restart the clock on Kleckley's right to challenge his underlying conviction (as to Counts 1 & 2), which happened some 23 years ago.

After much deliberation, we conclude that this resentencing process *didn't* create a "new" judgment under § 2244. We reach this conclusion for three reasons. *One*, although the resentencing court re-issued several documents—some of which appear to authorize Kleckley's confinement—it never entered a new *judgment* under Florida law. Indeed, while the 2010 resentencing documents resemble the sentencing documents the original trial court entered ten years earlier, they're missing one critical detail: The original trial court's judgment *specifically* adjudicated Kleckley guilty of Counts 1 and 2, *see* 2000 Judgment [ECF No. 12-1] at 17 ("The Defendant . . . having been tried and found guilty of [Counts 1 and 2] and no cause having been shown why the Defendant should not be adjudicated guilty, IT IS ORDERED THAT the Defendant is hereby ADJUDICATED GUILTY of the above crime(s)."), whereas the resentencing court never "re-adjudicated" Kleckley guilty of *either* count, *see generally* Resentencing Documents [ECF No. 12-2] at 225–37; *see also* FLA. R. CRIM. P. 3.650 ("The term 'judgment' means the adjudication by the court that the defendant is guilty or not guilty.").

7

*Two*, Florida law requires trial judges, when issuing *judgments*, to use the model forms set out in the Florida Rules of Criminal Procedure. *See* FLA. R. CRIM. P. 3.986 ("FORMS RELATED TO JUDGMENT AND SENTENCE[:] (a) Sufficiency of Forms. The forms as set forth below, or computer generated formats that duplicate these forms, *shall* be used by all courts." (emphasis added)).[3] And the fact is that none of the Resentencing Documents Kleckley has identified—including and especially the Uniform Commitment and the resentencing order—appear on the forms the Florida Rules mandate[4] for judgments. So, while the resentencing court signed some judgment-*like* documents, the only *actual* "judgment" the state courts ever issued in this case—*i.e.*, the only time a state judge adjudicated Kleckley guilty on the forms the Florida Rules require for judgments—was the one from June 12, 2000.

*Three*, the Eleventh Circuit has suggested that a resentencing order *isn't* a new judgment unless it alters the term of the petitioner's imprisonment. *See, e.g.*, *Vaughan v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 554, 556 (11th Cir. 2019) ("The state court order amending his original 1997 judgment of conviction did not constitute a new judgment that reset the AEDPA's one-year statute of limitations for filing a § 2254 petition because he remained in custody pursuant to the original judgment and his term of imprisonment was not altered by the amendment."); *Wells v. Sec'y, Dep't of Corr.*, 769 F. App'x 885, 888 (11th Cir. 2019) ("Wells did not receive a new prison sentence that replaced his 1994 sentence

---

[3] The Rule goes on to say that "[v]ariations from these forms do not void a judgment . . . that [is] otherwise sufficient." FLA. R. CRIM. P. 3.986(a). But that doesn't mean we can't consider, in deciding whether the resentencing judge intended the resentencing order and the Uniform Commitment to represent a new judgment, the fact that those documents do *not* appear on the form the Florida Rules specifically *require* for "JUDGMENT[S]." *See* FLA. R. CRIM. P. 3.986(b) (showing an exemplar of the judgment form). Plus, as we've highlighted, these Resentencing Documents are *not* "otherwise sufficient" to constitute a judgment under Florida law because they don't adjudicate Kleckley guilty of *anything*.

[4] The word "shall" indicates the imposition of a *mandatory* condition. *See Hewitt v. Helms*, 459 U.S. 460, 471 (1983) ("[T]he Commonwealth has gone beyond simple procedural guidelines. It has used language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed[.]"); A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 112 (2012) ("Mandatory words impose a duty; permission words grant discretion.").

to entitle him to another round of federal habeas review." (cleaned up)); *Booth v. Sec'y, Fla. Dep't of Corr.*, 729 F. App'x 861, 862–63 (11th Cir. 2018) ("That order did not authorize Booth's confinement, nor did it vacate any of his sentences and replace them with new ones." (citing *Patterson*, 849 F.3d at 1326–27)).[5] And (it probably goes without saying) the resentencing had absolutely no effect on Kleckley's overall term of imprisonment. After the resentencing, after all, Kleckley was still subject to the very same life sentence he had already been serving on Count 1, *and* (perhaps more important) he was still subject to the same thirty-year "habitual felony offender" sentence he had already been serving on Count 2. Since the resentencing didn't alter Kleckley's term of imprisonment *in any way*, it didn't change the "status quo" of his confinement and, therefore, didn't result in a renewed adjudication of guilt. It thus wasn't a new judgment under Florida law.

### B.  A New Judgment on Count 2 Wouldn't Trigger a New Limitations Period Anyway

But here's the rub: Even if we were to accept that the resentencing resulted in a new judgment as to Count 2, Kleckley wouldn't be allowed to challenge his underlying conviction *anyway* because he'd still be serving a life sentence on Count 1, which the resentencing didn't even purport to disturb. Recall that, on June 12, 2000, the trial court sentenced Kleckley to a life sentence on Count 1 and a thirty-year sentence for Count 2—each sentence to run concurrently with the other. *See* 2000 Judgment and Sentencing Orders [ECF No. 12-1] at 17–23. So, if Kleckley's right that, in 2010, the resentencing court "issued a new judgment authorizing [his] confinement" on Count 2, he'd have been subject to two different orders "that command[ed] the Secretary to imprison [Kleckley]"—each with its own separate finality date under § 2244. *Patterson*, 849 F.3d at 1327. We aren't the first to identify

---

[5] Kleckley insists that the Fourth DCA "vacated Petitioner's prior sentence." Rule 59(e) Motion at 2. But that's just not true. The Fourth DCA's opinion says no such thing and did little more than remand the case back to the trial court—with instructions to hold a resentencing *only if* the State could point to no "record portions conclusively refuting" Kleckley's claim that "his habitual sentence imposed for count two is illegal[.]" *Kleckley*, 4 So. 3d at 1291. Had the appellate court truly vacated the sentence, it presumably would have said so. More importantly, though, it would've required a resentencing *no matter what*.

this problem. In *Patterson*, then-Chief Judge Carnes noted that the Eleventh Circuit hadn't decided whether "a prisoner who obtains a non-detrimental change in his sentence [can] also challenge his original, undisturbed conviction as though the conviction had occurred at the date of the change in the sentence[.]" *Id.* at 1328 (Carnes, C.J., concurring). And this is still an open question today. *See McMeans v. Alabama*, 2022 WL 2911803, at *4 n.6 (M.D. Ala. July 11, 2022) (Coody, Mag. J.) ("Chief Judge Carnes noted that, in the Eleventh Circuit, open questions remain as to whether a 'non-detrimental change' in a sentence allows a prisoner to file a federal habeas petition challenging his original, undisturbed conviction as though the conviction had occurred at the date of the change in the sentence." (citing *Patterson*, 849 F.3d at 1328–29 (Carnes, C.J., concurring))), *report and recommendation adopted*, 2022 WL 2913002 (M.D. Ala. July 22, 2022) (Albritton, J.).

Still, we're not exactly writing on a blank slate here. Several *other* circuits *have* addressed this question—though, as one district court has noted, their answers are decidedly "split." *Cassidy v. Dixon*, 2021 WL 6808302, at *2 (N.D. Fla. Dec. 22, 2021) (Cannon, Mag. J.), *report and recommendation adopted*, 2022 WL 356038 (N.D. Fla. Feb. 7, 2022) (Stafford, J.); *see also Cox v. Sec'y Fla. Dep't of Corr.*, 837 F.3d 1114, 1118 (11th Cir. 2016) (recognizing the circuit split).

On one side, the Second and Ninth Circuits have held that a new judgment as to one count creates an entirely new judgment as to all *other* counts for purposes of § 2244. *See Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010) ("A different result is not warranted by the fact that . . . [Johnson] effectively challenges an unamended component of the judgment."); *Wentzell v. Neven*, 674 F.3d 1124, 1127–28 (9th Cir. 2012) ("In the context of finality, we treat the judgment of conviction as one unit, rather than separately considering the judgment's components, *i.e.,* treating the conviction and sentence for each count separately."). On the other side, the Third, Fifth, and Seventh Circuits have come to the opposite conclusion. *See In re Lampton*, 667 F.3d 585, 590 (5th Cir. 2012) ("The less fundamental change made to Lampton's judgment of conviction is not enough to allow him to bypass

10

AEDPA's restrictions on piecemeal habeas litigation."); *Turner v. Brown*, 845 F.3d 294, 298 (7th Cir. 2017) ("Under the same reasoning, although a challenge to Turner's robbery conviction may be timely, the challenge to his sentence for murder is not. His murder conviction and life sentence were unaffected by the 2013 resentencing and thus remained final."); *Romansky v. Superintendent Greene SCI*, 933 F.3d 293, 300–01 (3d Cir. 2019) ("In summary, we conclude that Romansky's habeas petition was not timely as to the conspiracy conviction at his 1987 trial because the petition was not filed within one year of the conclusion of his state post-conviction process and because the 2000 resentencing did not impose a new judgment as to the undisturbed counts of conviction (including the conspiracy charge).").

After careful review, we side with the latter three circuits—in particular, with the Third Circuit's opinion in *Romansky*. The petitioner in that case had been convicted in 1987 of, among other things, conspiring to steal cars, receiving stolen property, and dealing in stolen property—all stemming from his role in "an auto theft ring in northeastern Pennsylvania." *Romansky*, 933 F.3d at 295–96. For these crimes, the state trial judge sentenced him to "9 to 18 years' total incarceration, including 2 to 4 years on the conspiracy charge." *Id.* at 296. But, ten years later, a state appellate court vacated Romansky's convictions as to *one* of the stolen vehicles, finding that "the Commonwealth had unlawfully used false testimony." *Ibid.* "Romansky was retried on the vacated charges in January 2000, again resulting in conviction on all of those counts." *Ibid.* Two months later, "he received the same sentence on each of the counts as in 1987—9 to 18 years in total, including 2 to 4 years on the conspiracy charge." *Ibid.*

After exhausting his state appeals, Romansky challenged the "events surrounding [his] first trial in 1987" on the ground that his resentencing in 2000 on *some* of the original counts had reset § 2244(d)'s limitations period for *all* of the counts. *Id.* at 298–99. Rejecting this argument, the Third Circuit concluded that "[t]he sentence imposed in 2000 after retrial was not a new judgment on the

11

undisturbed counts of conviction." *Id.* at 300. The court reasoned that, had Romansky been "acquitted on all charges during the retrial for the vacated counts," he wouldn't have been able to use his new trial to attack his original conviction from 1987 because he "would simply have continued serving out his sentence on the undisturbed counts"—whatever the outcome of the second trial had been. *Ibid.*; *see also Lampton*, 667 F.3d at 589 ("Lampton is still serving the same life sentence on the same CCE conviction that was imposed by the judgment entered in August of 1997. . . . Lampton's sentence on the CCE conviction remained intact after the initial § 2255 proceeding was completed.").[6]

We agree with the Third Circuit's logic. In fact, we think our case is arguably more straightforward than *Romansky* was. In *Romansky*, after all, the resentencing followed a second *trial*—which itself came about because an appellate court had *vacated* Romansky's conviction as to one of the cars. *See Romansky*, 933 F.3d at 296 ("Ten years after the trial, the Pennsylvania Superior Court ultimately ruled that the Commonwealth had unlawfully used false testimony and therefore vacated

---

[6] The Third Circuit recently distinguished *Romansky*—though not in a way that saves Kleckley here. *See Lesko v. Sec'y Pa. Dep't of Corr.*, 34 F.4th 211, 224 (3d Cir. 2022) ("[A] prisoner who receives relief as to his sentence is not barred from raising, in a second-in-time habeas petition, a challenge to an undisturbed conviction."). In *Lesko*, the petitioner had been resentenced "as to *all counts* of [his] conviction," and he thus (understandably) argued that his resentencing had reset § 2244(d)(1)(D)'s limitations period as to *all* of those counts—even though the original sentence and the new sentence were the same. *Id.* at 225 (emphasis added). In those circumstances—not present here—the Third Circuit agreed with the petitioner and held that the resentencing had reset the limitations period as to *all* the counts of conviction. *See ibid.* ("Resentencing creates a new judgment as to each count of conviction for which a new or altered sentence is imposed, while leaving undisturbed the judgments for any counts of conviction for which neither the sentence nor the conviction is changed. Lesko was resentenced as to all counts of his conviction; as a result, his guilt-phase claims are not barred as second-or-successive."). But *Lesko* has nothing to do with the scenario we have here—the scenario the Third Circuit faced in *Romansky*—which is a resentencing as to only *some* counts that leaves the remaining counts undisturbed. In this circumstance, as the Third Circuit reaffirmed just last year, *Romansky* is still the law—and, again, "*Romansky* . . . stands for the proposition that a resentencing as to one count of a conviction that makes no changes to the confinements authorized by the other undisturbed counts does not affect the 'judgment' as to those counts and, hence, does not reset the habeas counter." *Ibid.*; *see also United States v. Norwood*, 49 F.4th 189, 209 (3d Cir. 2022) ("We held, in other words, that resentencing creates a new judgment for purposes of § 2254 as to each count of conviction for which a new or altered sentence is imposed, while leaving undisturbed the judgments for any counts of conviction for which neither the sentence nor the conviction is changed." (cleaned up)).

Romansky's convictions as to the Bronco, but *not* as to the Pontiac . . . . Romansky was retried on the vacated charges in January 2000, again resulting in conviction on all of those counts." (emphasis in original)). In our case, by contrast, no court has ever vacated (or so much as called into question) either of Kleckley's counts of conviction. As we've explained, when Kleckey was sentenced on June 12, 2000, he received a life sentence on Count 1 and a concurrent thirty-year sentence as a "habitual felony offender" on Count 2. *See* 2000 Judgment and Sentencing Orders [ECF No. 12-1] at 17–23. No court (as we've explained) has ever vacated either conviction. In any event, after Kleckley was resentenced on January 28, 2010, he was still serving that *same* life sentence on Count 1 and that very *same* thirty-year sentence as a "habitual felony offender" on Count 2. *See* Resentencing Order [ECF No. 12-2] at 229–31. Indeed, even if the resentencing court had vacated Count 2 completely (something the resentencing judge never even contemplated), the Respondent would *still* have held Kleckley in prison *for the rest of his life* based on the original sentencing court's June 12, 2000 judgment as to Count 1. *See* 2000 Judgment [ECF No. 12-1] at 17. As the Third Circuit has noted, since Kleckley would have no right to assert an untimely challenge to his original conviction on Count 1 by virtue of having been acquitted, years later, on Count 2, we cannot agree that his continued incarceration on Count 2—an incarceration (we emphasize) whose duration the resentencing did not alter—would allow him to do what a full *acquittal* on Count 2 would not have permitted. *See Romansky*, 933 F.3d at 300 ("If an acquittal at [resentencing] would not change the undisturbed conviction, Romansky's argument that a conviction should have such an effect is illogical.").

* * *

Because we conclude that the resentencing didn't produce a new judgment, we **DENY** Kleckley's Rule 59(e) Motion as to the time-barred claims. In doing so, of course, we readopt our original finding that "[t]he state trial court [ ] signed a new sentencing order as to Count 2—but (notably) did not issue a new judgment." *Kleckley I*, 2022 WL 2980460, at *3. Moreover, even if the

13

resentencing *did* result in a new judgment, that judgment only affected Count 2 and didn't impact Kleckley's underlying conviction—a reality that precludes Kleckley from advancing otherwise untimely challenges to any (alleged) errors that may have occurred at his trial. *See Romansky*, 933 F.3d at 300 ("[The issue] is whether, where some but not all counts of conviction are disturbed on appeal or in post-conviction proceedings, the defendant's eventual resentencing is a new judgment as to the undisturbed counts of conviction. We conclude the answer is no."); *cf. Vaughan*, 770 F. App'x at 556 ("The state court order amending his original 1997 judgment of conviction did not constitute a new judgment that reset the AEDPA's one-year statute of limitations for filing a § 2254 petition because he remained in custody pursuant to the original judgment and his term of imprisonment was not altered by the amendment.").

At the same time, as we've suggested, reasonable jurists *have* disagreed on (at least) one of the central questions we face here—namely, whether a resentencing on one count resets the limitations period for collateral attacks as to *all* counts. *See Cassidy*, 2021 WL 6808302, at *2 ("[R]easonable jurists could debate whether an amended judgment that vacates one out of three counts while leaving the other two intact is a new judgment as to all counts."). And we think "reasonable jurists" *could* also disagree with our handling of Kleckley's threshold question—whether, in the circumstances presented here, Kleckley's resentencing resulted in a "new judgment" for purposes of § 2244. We'll therefore grant Kleckley (as we explain in more detail below) a Certificate of Appealability as to these two issues *only*.

## II. The Claims We Denied on the Merits (Claims 1–3, 11)

Kleckley also alleges that we erred when we denied his remaining four claims on the merits. For Claim 1, he says that we "overlooked that the actual conflict [with his lawyer] affected counsel's representation." Rule 59(e) Motion at 6. As to Claim 2, he argues (again) that counsel should've asked the victim, at the resentencing, whether the victim believed that Kleckley was "cold hearted,

14

disregarded life, and had no value for life." *Id.* at 7. On Claim 3, he insists (as he did before) that counsel should've presented Dorothy Jones's testimony at resentencing. *Id.* at 9. And, with respect to Claim 11, he contends that the resentencing court violated his right to due process when it imposed a "habitual felony offender" sentence as to Count 2. *Id.* at 10. None of these arguments are appropriate on a Rule 59(e) motion.

Rule 59(e) gives us a chance to consider "newly discovered evidence" or to correct "manifest errors of law or fact" that arise from questions we may have *failed* to consider in the first instance. *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999). But the Rule *cannot* be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet*, 408 F.3d at 763. In our case, Kleckley is simply regurgitating the same arguments he already made in his § 2254 petition—all of which we've already considered and rejected. *See generally Kleckley II*, 2022 WL 11607203, at *4–8.

Kleckley (it's true) maintains that we "overlooked" some of his arguments. *See, e.g.*, Rule 59(e) Motion at 6 ("This honorable Court overlooked that the actual conflict affected counsel's representation."); *id.* at 7 ("The Honorable Court overlooked that the victim's testimony at sentencing was not only limited to a brief statement, that Kleckley be resentenced to life in prison."); *id.* at 9 ("The Court overlooked that Dorothy [Jones's] testimony was corroborative but not cumulative, even though the testimony may have been duplicat[iv]e in some aspects of some testimony during Petitioner's resentencing."). But any fair reading of our prior order conclusively undermines this contention. In that prior order, after all, we specifically rejected the same arguments Kleckley now says we "overlooked." *See Kleckley II*, 2022 WL 11607203, at *5 ("Still, Claim 1 fails because Kleckley has failed to allege that this conflict 'adversely affected counsel's representation.'"); *id.* at *6 ("Indeed, a careful review of the victim's statement reveals that he offered no factual details that could be rebutted or challenged on cross-examination at all."); *id.* at *7 ("Since Jones's testimony would have

been merely cumulative of the humanizing evidence counsel actually presented, adding to what was already there would have made little difference." (cleaned up)).[7] Kleckley, of course, "disagree[s] with [our] treatment of certain facts and [ ] legal conclusions"—but that's not a valid basis for reconsideration under Rule 59(e). *Michael Linet*, 408 F.3d at 763; *see also Parekh v. CBS Corp.*, 820 F. App'x 827, 835 (11th Cir. 2020) ("The district court did not abuse its discretion in denying Mr. Parekh's Rule 59(e) motion, as he did not point to any manifest errors of law or fact. His motion repeated arguments already made and rejected[.]"). Since Kleckley has failed to present anything *new* for us to consider as to Grounds 1–3 & 11, we **DENY** these aspects of his Rule 59(e) Motion.

## CERTIFICATE OF APPEALABILITY ("COA")

A COA is appropriate only where the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

---

[7] Claim 11 is a (slightly) different story. That's because Kleckley now explains *why* he believes his "habitual felony offender" sentence violated the Due Process Clause. *See* Rule 59(e) Motion at 10 ("The Petitioner case is different the law is clear that Florida Statutes 775.084(1)(a)(3), (1999), does not permit habitualization for a felony 'relating to the purchase or the possession of a controlled substance.'" (quoting *Harris v. State*, 695 So. 2d 742, 742 (Fla. 1st DCA 1996) (errors in original))). Unfortunately, Kleckley's argument turns exclusively on his textual interpretation of Florida law (and on his belief about what the Florida Legislature intended when it adopted that law). In other words, his argument remains thoroughly (and improperly) grounded in state law. *See Kleckley II*, 2022 WL 11607203, at *8 ("[O]ur Circuit's district courts uniformly refuse to review a state court's imposition of a habitual-felony-offender sentence.").

"Because the denial of a Rule 59(e) motion constitutes a 'final order' in a state habeas proceeding, [a] COA is required before [an] appeal may proceed." *Perez v. Sec'y, Fla. Dep't of Corr.*, 711 F.3d 1263, 1264 (11th Cir. 2013).

As we've suggested, we'll grant Kleckley a COA on two discrete questions relating to the timeliness of Claims 4–10. Given the circuit split we've identified—and in light of Kleckley's arguments about the degree to which his resentencing resulted in a new "judgment" under Florida law—we can agree that jurists of reason might "find it debatable" whether our procedural ruling was right. *Eagle*, 279 F.3d at 935. We'll therefore grant Kleckley a COA on two issues:

> 1. If a state resentencing court reimposes on a state prisoner the same sentence the prisoner had already been serving, without re-adjudicating him guilty on any count, do the resentencing documents constitute a "new judgment" under *Magwood v. Patterson*, 561 U.S. 320 (2010), *Patterson v. Secretary, Florida Department of Corrections*, 849 F.3d 1321 (11th Cir. 2017), and their progeny?
>
> 2. If a state resentencing court issues a new judgment as to only one of several counts—leaving the conviction and sentence for the remaining counts undisturbed—does this new judgment allow a habeas petitioner to file an otherwise untimely § 2254 petition, challenging his underlying conviction as to all the counts?

By contrast, reasonable jurists would not debate our decision to deny Kleckley's Rule 59(e) Motion as it relates to Grounds 1–3 & 11. We therefore decline to issue a COA on those claims.

\* \* \*

After careful review, we hereby **ORDER AND ADJUDGE** that Kleckley's Rule 59(e) Motion [ECF No. 29] is **DENIED**. A COA will **ISSUE** on the two questions presented above. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on March 2, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Robert Kleckley, *pro se*
      counsel of record